**Jerome OTTESON, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 79–1700.

United States Court of Appeals, Tenth Circuit.

Submitted April 4, 1980.

Decided June 11, 1980.

Lawrence Litvak, Denver, Colo., for plaintiff-appellant.

Joseph Dolan, U. S. Atty., William C. Danks, Asst. U. S. Atty., Denver, Colo., for defendant-appellee.

Before SETH, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

The tragic accident giving rise to this litigation occurred in San Juan National Forest in Colorado. The decedent Stacey Otteson was a passenger in a jeep returning from a pleasure trip. After traveling down a narrow dirt logging access road which reaches a dead end several miles beyond the point of the accident, the jeep was forced to return due to impassible snow and ice. On the way back, the jeep slid on an ice patch and rolled down an embankment. Stacey and the driver were killed, and two other passengers received minor injuries.

The estate of Stacey Otteson brought a wrongful death action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.* It alleged that Stacey's death resulted from the government's negligent failure to maintain the road free from ice, to warn of hazards on the road, or to close it when it became unsafe. The government moved for summary judgment, contending it is immune from liability under the Tort Claims Act on two grounds: 1) it was performing a "discretionary function" in the design and maintenance of the road; and 2) a private individual would not be liable under the facts of the case and the law of the forum state. The trial court found the second contention dispositive and granted the government's motion. We affirm.

The Tort Claims Act provides for a limited waiver of immunity by the United States, and makes the government liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. "[T]he test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *Rayonier Inc. v. United States*, 352 U.S. 315, 319, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957).

The trial judge concluded that a private landowner is not liable for negligence to persons coming onto the land for recreational purposes under Colorado's "sightseer statute".[1] Therefore, he found as a matter

---

1. Sections 33–41- 101 *et seq.* of the Colorado Revised Statutes (1973) provide that:

"33–41–101. Legislative declaration. The purpose of this article is to encourage owners of land within rural areas to make land and water areas available for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

\*   \*   \*   \*   \*   \*

"33–41–102. Definitions. As used in this article, unless the context otherwise requires:

(1) 'Charge' means a consideration paid for entry upon or use of the land or any faclities [*sic*] thereon or adjacent thereto.

(2) 'Land' also means roads, water, watercourses, private ways, and buildings, structures, and machinery or equipment thereon, when attached to real property.

(3) 'Owner' includes the possessor of a fee interest, a tenant, lessee, occupant, or any person having a right to grant permission to use the land.

(4) 'Person' includes any individual, regardless of age, maturity, or experience.

(5) 'Recreational purpose' includes any one or any combination of the following: Hunting, fishing, camping, picnicking, hiking, horseback riding, snowshoeing, cross county [*sic*] skiing, bicycling, or the riding of motorized recreational vehicles.

\*   \*   \*   \*   \*   \*

"33–41–103. Limitation on landowner's liability. (1) Subject to the provision of section 33–41–105, an owner of land who either directly or indirectly invites or permits, without charge, any person to use such property for recreational purposes does not thereby:

of law under the *Rayonier* standard that the government had not waived its immunity from liability in accordance with the Tort Claims Act.

On appeal, plaintiff contends that the sightseer statute should not have been applied to bar its claim because the government is not in the same position as the private parties to whom the statute applies. The purpose of the statute is to encourage private landowners to open their land to the public for recreational purposes. However, plaintiff asserts that the government has an independent duty to maintain the national forests as public recreational areas. Therefore, plaintiff argues that the government has a corresponding duty to maintain the roads in the national forests for recreational use. Plaintiff would have us equate this duty with that which a political subdivision has to maintain public roads.

Plaintiff's argument misconceives the purposes of the national forests, as set forth in the National Forests Acts, 16 U.S.C. §§ 471a *et seq.*[2] The recent Supreme Court case of *United States v. New Mexico*, 438 U.S. 696, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978), contains a thorough discussion of the legislative history and purposes of the national forest system. The Court there held that the Acts establishing the national forests had "only two purposes—'[t]o conserve the water flows and to furnish a continuous supply of timber for the people'. . . . National forests were not to be reserved for aesthetic, environmental, recreational, or wildlife-preservation purposes." *Id.* at 707, 708, 98 S.Ct. at 3017–3018. While the Court noted that the Multiple-Use Sustained-Yield Act of 1960[3] broadened the purposes for which national forests are maintained to include recreation, the Court made clear that recreation was a secondary and supplemental purpose, and that a national forest could not be established for recreation alone. 438 U.S. at 713–715, 98 S.Ct. at 3020–3021.

Bearing in mind the primary purposes for which national forests have been established, we now consider plaintiff's argument that the Forest Service has a duty to maintain roads in the national forests under the same standard imposed on a political subdivision. While it is true that Congress has stated recreation to be one of the uses for the national forest road system,[4] the legislation and relevant regulations read as a whole clearly indicate that the roads are intended primarily to facilitate the harvesting, removal and manage-

(a) Extend any assurance that the premises are safe for any purpose;

(b) Confer upon such person the legal status of any invitee or licensee to whom a duty of care is owed;

(c) Assume responsibility or incur liability for any injury to person or property or for the death of any person caused by an act or omission of such person."

2. Title 16 U.S.C. § 475 established the purposes for which national forests may be established and administered:

"No national forest shall be established, except to improve and protect the forest within the boundaries, or for the purpose of securing favorable conditions of water flows, and to furnish a continuous supply of timber for the use and necessities of citizens of the United States . . . ."

3. Title 16 U.S.C. § 528 (1970) provides:

"It is the policy of the Congress that the national forests are established and shall be administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes. The purposes of sections 528 to 531 of this title are declared to be *supplemental to*, but not in derogation of, the purposes for which the national forests were established as set forth in section 475 of this title." (Emphasis added).

4. Title 16 U.S.C. § 532 (1970) provides:

"The Congress hereby finds and declares that the construction and maintenance of an adequate system of roads and trails within and near the national forests and other lands administered by the Forest Service is essential if increasing demands for timber, recreation, and other uses of such lands are to be met; that the existence of such a system would have the effect, among other things, of increasing the value of timber and other resources tributary to such roads; and that such a system is essential to enable the Secretary of Agriculture (hereinafter called the Secretary) to provide for intensive use, protection, development, and management of these lands under principles of multiple use and sustained yield of products and services."

ment of timber. *See* 16 U.S.C. § 535 and 36 C.F.R. § 212.12 (1979). Although these provisions authorize the construction of roads of a higher standard than that needed for the harvesting and removal of timber, they do not require it. The road on which this accident occurred was constructed and maintained for logging.[5] We do not believe Congress intended to impose on the Forest Service the same standard of maintenance with respect to all logging roads that a political subdivision has regarding public thoroughfares. Therefore, we reject plaintiff's argument that the government should be treated as a political subdivision rather than a private landowner for purposes of the Tort Claims Act.

Other courts have reached the same conclusion. In *Boadle v. United States*, 472 F.2d 1014 (9th Cir. 1973), the plaintiff was severely injured when a bulldozer he was operating on a Forest Service road slipped on the ice, slid off the road and rolled down a slope. The court treated the government in that case as a private landowner rather than a municipal subdivision, noting that:

> "Any invitation extended by the United States to the general public to travel [on the road] was premised upon the assumption that the road's physical condition would not present the hazards of winter passage. Boadle's action in attempting to maneuver upon the road during the winter, at a time when it was covered with snow, were therefore inconsistent with the United States' invitation . . ."

*Id.* at 1016. In denying recovery, the court further held that the regulations promulgated by the Forest Service did not create an independent duty upon the United States to warn the plaintiff of the road's hazardous condition. *See also McClain v. United States*, 445 F.Supp. 770 (D.Or.1978). *Cf., Gard v. United States*, 594 F.2d 1230 (9th Cir. 1979) (injury resulting from acci-

dent in abandoned mine shaft on government land).

■ Plaintiff's argument that the government should not be treated as a private party under the Colorado sightseer statute because it is somehow obligated to keep the national forests open to the public is unpersuasive. The Forest Service regulations allow each Forest Supervisor, among others, to close or restrict the use of forest areas and roads.[6] If liability were imposed upon the government in cases such as this one, the Forest Service might well choose to close the forests to public use rather than bear the heavy burden of maintaining logging roads as public thoroughfares. This result is precisely what the Colorado sightseer statute was enacted to prevent. Thus, we hold that the government is entitled to the protection of the Colorado sightseer statute and is therefore only liable "[f]or willful or malicious failure to guard or warn against a known dangerous condition . . . ." Colo.Rev.Stat. § 33–41–104(a) (1973).

■ Plaintiff argues that there is a genuine issue of material fact as to the willfulness of the government's conduct and its knowledge of the icy condition of the road. On a motion for summary judgment, the burden is on the moving party to show the absence of a genuine issue of any material fact, and the pleadings and other documentary evidence must be construed in favor of the party opposing the motion. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Coleman v. Darden*, 595 F.2d 533 (10th Cir. 1979). However, "once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." *Id.* at 536.

In *Miller*, the area in which the accident occurred was maintained by the government and included bathroom facilities and a boat dock.

---

5. We need not decide what liability, if any, would be incurred by the Forest Service with respect to roads built to a standard higher than that required for logging. Thus this case is distinguishable from *Miller v. United States*, 597 F.2d 614 (7th Cir. 1979), cited by plaintiff.

6. *See* 36 C.F.R. §§ 261.50, 261.53, and 261.54 (1979).

Here plaintiff's claim for relief is plainly couched in terms of negligence by the government. The complaint on its face creates no issue of willful or malicious government conduct. Although plaintiff states *on appeal* that its preliminary investigation has shown the government was aware of the condition of the road, no such evidence was presented to the trial court below. A party having evidence tending to create a genuine issue of fact must present that evidence to the trial judge in opposing a motion for summary judgment. If he fails to do so, summary judgment may be properly granted against him. *E. P. Hinkel & Co. v. Manhatten Co.*, 506 F.2d 201 (D.C. Cir. 1974); *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972); 10 Wright & Miller, *Federal Practice and Procedure* § 2739 (1973). Here, neither the pleadings nor the proof creates a genuine issue of fact. Summary judgment was appropriate.

We have reviewed the remaining contentions of the plaintiff on appeal and find them to be without merit. Accordingly, the trial court judgment is affirmed.