**Tracy EWELL, By and Through her guardian Gene EWELL, Plaintiff,**

**v.**

**The UNITED STATES of America, the Bureau of Land Management of the United States Department of Interior, Glen Otten, Ella Rae Otten, Utah County, a body politic, and Gordon Swan, dba Swan's Market, Defendants.**

Civ. No. C–81–0753W.

United States District Court,
D. Utah, C.D.

Jan. 13, 1984.

Richard B. Johnson, Provo, Utah, for plaintiff.

Joseph W. Anderson, Asst. U.S. Atty., Salt Lake City, Utah, Reid W. Nielsen, Regional Sol., U.S. Dept. of Interior, Salt Lake City, Utah, for Federal defendants.

Boyd L. Park, Christopher B. Cannon, Provo, Utah, for defendant Gordon Swan dba Swan's Market.

David H. Epperson, Salt Lake City, Utah, Guy Burningham, Deputy Utah County Atty., Provo, Utah, for defendant Utah County.

D. John Musselman, Provo, Utah, for defendant Leon and Leaun Otten.

Richard M. Taylor, Spanish Fork, Utah, for defendant Sheldon Hathaway.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

The defendants United States of America and Utah County filed motions for summary judgment which were argued orally on October 14, 1983. Prior to the hearing, the court read the memoranda on file and the relevant authorities. After oral argument, the court took the matter under advisement and has since reviewed the memoranda and relevant authorities. Based on the foregoing, the court renders the following decision and order.

The plaintiff brought this action against the United States, Utah County, Gordon Swan d/b/a Swan's Market ("Swan") and others for personal injuries she sustained in a motorcycle accident which occurred on property owned by the federal government, administered by the Bureau of Land Management ("BLM") and used by Utah County as a gravel pit. The claim against the United States is brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, which is the basis for this court's subject matter jurisdiction.[1] In that claim, plaintiff alleges that the federal government negligently failed to post warning markers, erect barriers, prevent vehicular traffic in the area in question, and otherwise failed to keep the premises safe for the use of recreational vehicles.

Under the FTCA, a plaintiff may recover damages from the federal government for injury

caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person*, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*

---

1. Plaintiff has also asserted various state claims against the driver of the motorcycle, the driver's mother, Utah County, and Swan as pendent and ancillary to the FTCA claim.

28 U.S.C. § 1346(b) (emphasis added); *see id.* § 2674. Thus, whether the plaintiff in this case has a valid claim against the United States depends "upon whether a private individual under like circumstances would be liable under state law." *United States v. Muniz*, 374 U.S. 150, 153, 83 S.Ct. 1850, 1853, 10 L.Ed.2d 805 (1963).

██ Because the accident occurred on government property in Utah, the tort law of the state of Utah is applicable. *Richards v. United States*, 369 U.S. 1, 6–8, 82 S.Ct. 585, 589–590, 7 L.Ed.2d 492 (1962). The Federal government has moved this court to grant summary judgment in its favor[2] based upon the Utah Limitation of Landowner Liability Act, Utah Code Ann. §§ 57–14–1 to –7 (Supp.1983). Under that statute,

> an owner of land owes no duty of care to keep the premises safe for entry or use by any person using the premises for any recreational purpose, or to give any warning of a dangerous condition, use, structure, or activity on those premises to those persons.

*Id.* § 57–14–3. The statute lists two exceptions to this general exemption from a duty of care owed to recreational users:

> Nothing in this act limits in any way any liability which otherwise exists:
>
> (1) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity or for deliberate, willful, or malicious injury to persons or property; or
>
> (2) For any injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for any recreational purpose ....

*Id.* § 57–14–6.

It is undisputed that the United States is the owner of the land in question, which is located within the State of Utah; that plaintiff was engaged in recreational activity as defined by the Utah statute at the time of the alleged injuries; and that the

plaintiff paid no fee for the use of the United States' land. *See* Memorandum of Defendant United States in Support of Motion for Summary Judgment at 1–2 (Aug. 12, 1983); Memorandum in Support of Utah County's Motion for Summary Judgment at 1 (Aug. 23, 1983); Plaintiff's Memorandum in Opposition to Defendant United States and Utah County's Motions for Summary Judgment at 1 (Sept. 16, 1983). Plaintiff, however, asserts that the United States's motion for summary judgment based on the Utah statute should be denied for two reasons. First, plaintiff argues that the Utah statute does not apply to the Federal government and second, that even if the statute does apply there is a material issue of fact as to whether the conduct of government officials was willful and malicious within the Utah statute's exception cited above. Defendant Swan has opposed the United States' summary judgment motion for an additional reason asserting that the Federal government has a separate duty of care owed to recreational users under federal and state mining laws.

I. *Applicability of the Utah Landowner's Act to the Federal Government*

Plaintiff argues that the Utah Landowner Act applies only to private landowners and not to the Federal government. Essentially, plaintiff contends that the Utah legislature intended the act to apply only to private landowners and that application of the act to the United States would be inconsistent with its stated purpose.

> The first section of the act provides: The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for those purposes.

Utah Code Ann. § 57–14–1 (Supp.1983). Plaintiff asserts that to achieve this stated purpose, the act offers the landowner im-

---

**2.** Defendant Utah County filed a similar motion for summary judgment on August 23, 1983. This decision, however, makes it unnecessary for the court to address the Utah County mo-

tion. This court expresses no opinion as to the validity of the plaintiff's claims against Utah County or the other defendants.

munity from actions based on ordinary negligence in exchange for the opening of his land. When the landowner is the federal government, the argument continues, no exchange takes place and, therefore, the act should not apply.[3]

The Utah statute has not yet been interpreted by the Utah Supreme Court. This court is, therefore, faced with a situation in which it must attempt to construe the law of the State of Utah in the manner in which the Supreme Court of Utah would if faced with the same facts and issues. *See Burgert v. Tietjens*, 499 F.2d 1 (10th Cir.1974). In so doing, it "may look to all resources, including decisions of other states ... and federal decisions, and to the general weight and trend of authority." *City of Aurora v. Bechtel Corp.*, 599 F.2d 382, 386 (10th Cir. 1979). *See Hartford v. Gibbons & Reed Co.*, 617 F.2d 567 (10th Cir.1980).

After a review of the Utah Landowner's statute and state and federal decisions interpreting similar provisions from other states, the court concludes that plaintiff's argument must be rejected for three reasons.

First, the Utah statute states that the purpose of the act is "to encourage *owners of land* to make land and water areas available to the public for recreational purposes." Utah Code Ann. § 57–14–1 (Supp. 1983) (emphasis added). The act broadly defines "owner" to include "the possessor of any interest in land, a tenant, a lessee, and an occupant or person in control of the premises", *id.* § 57–14–2(2), and grants immunity from negligence actions to "an *owner of land*" who permits gratuitous recreational use of his land, *id.* § 57–14–3 (emphasis added). Contrary to plaintiff's

assertion, this language does not limit the act's application to "private landowners." Indeed, had the Utah legislature intended such a restriction, it would have been an easy matter to insert "private" or "nongovernmental" into either the purpose of the act or the definition of "owner."

Second, the policy of encouraging landowners to open land for recreational use applies equally to the federal government as to other landowners. That conclusion is consistent with federal court decisions that have considered the applicability of other states' landowner acts to the federal government under the FTCA. *See, e.g., Jones v. United States*, 693 F.2d 1299 (9th Cir.1982) (California law); *Otteson v. United States*, 622 F.2d 516 (10th Cir.1980) (Colorado law); *Gard v. United States*, 594 F.2d 1230 (9th Cir.), *cert. den.*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979) (Nevada law).

In *Otteson v. United States*, 622 F.2d 516 (10th Cir.1980), the Tenth Circuit held that the United States had no duty under the Colorado landowner act to maintain a Forest Service road or to warn the plaintiff of its hazardous condition. The *Otteson* court found that because Forest Service regulations allow each Forest Supervisor to restrict or close the use of forest area roads, the policy of encouraging landowners to make land available to the public for recreational use was served. The land in question in this case is administered by the Bureau of Land Management of the Department of Interior. Pursuant to the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701–1783, and other laws relating to federal lands, regulations have been

---

**3.** This argument is based on language from the preamble to a model act after which the Utah act is patterned. The preamble to the model act states in part:

> Recent years have seen a growing awareness of the need for additional recreational areas to serve the general public. The acquisition and operation of outdoor recreational facilities is on the increase. However, large acreages of private land could add to the outdoor recreation resources.... [I]n those instances where private owners are willing to make their land available to members of the general

public without charge, it is possible to argue that every reasonable encouragement should be given to them.

> ....

> *The suggested act which follows is designed to encourage availability of private lands* by limiting the liability of owners to situations in which they are compensated for the use of their property and to those in which injury results from the malicious or willful acts of the owner....

24 Council of State Gov'ts, *Suggested State Legislation* 150 (1965) (emphasis added.)

adopted authorizing the Federal Land Manager to "designate all public lands as either open, limited, or closed to off-road vehicles." 43 C.F.R. § 8342.1 (1982). Thus, the same reasoning applied by the Tenth Circuit in *Otteson* applies here. The Federal Land Manager could close portions of the public land to the use of off-road vehicles. The United States, therefore, had no obligation to make the land in question available to the public for the use of recreational vehicles and is fully entitled to the protection of the Utah act. *See Hahn v. United States*, 493 F.Supp. 57, 59 (M.D.Pa. 1980).

Third, by the express terms of the FTCA, Congress has waived the sovereign immunity of the United States only to the same extent that "a private person, would be liable ... in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Nevertheless, plaintiff relies on several state court decisions which hold that landowner liability statutes do not apply to state and local governmental entities in support of her argument that the Utah landowner act should not apply to the United States. *E.g., Delta Farms Reclamation District v. Superior Court*, 33 Cal.3d 699, 660 P.2d 1168, 190 Cal.Rptr. 494 (1983); *Chapman v. Pinellas County*, 423 So.2d 578 (Fla.Ct.App.1982); *Hovet v. City of Bagley*, 325 N.W.2d 813 (Minn.1980). Other state court decisions have held to the contrary. *See, e.g., Blakley v. California*, 108 Cal.App.3d 971, 167 Cal.Rptr. 1 (1980). In any event, the decisions cited by plaintiff are not controlling in an FTCA case against the federal government. Indeed, the specific language of the FTCA has been held consistently to require application of landowner liability statutes to the United States. Noting a split in authority among California appellate courts on the applicability of the California landowner provision to state and local governments, the Ninth Circuit stated:

> How that split among the California courts is resolved, is not pertinent to the issue pending here, for the Federal Tort Claims Act makes the United States liable for negligence in the same manner and to the same extent as a private individual would be under similar circumstances. 28 U.S.C. § 2674. Since [the California landowner statute] applies to private persons, it must, therefore, also apply in the same way to the United States.

*Simpson v. United States*, 652 F.2d 831 (9th Cir.1981) (citing *Phillips v. United States*, 590 F.2d 297 (9th Cir.1979)). *See also Richards v. United States*, 369 U.S. 1, 6, 82 S.Ct. 585, 589, 7 L.Ed.2d 492 (1962).

■ This court therefore concludes that the Utah Limitation of Landowner Liability Act applies to immunize the Federal government from liability for injuries sustained by a plaintiff engaged in recreational use of federal property unless the plaintiff can come within one of the exceptions in Section 57–14–6 of the act.

## II. *Willfulness or Maliciousness of the Federal Government's Failures or Omissions*

■ The exception of the Utah Landowner's Liability Act for the situation in which consideration has been paid for permission to use land does not apply here. Therefore, the only possible basis for imposing liability upon the United States would be upon a showing of willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity.

Although there is no Utah case law defining "willful or malicious" as used in the Utah landowner act, the Utah Supreme Court has defined the use of similar terms used in the Utah Automobile Guest Statute: "Wilful misconduct is the intentional failure to do an act, with knowledge that serious injury is the probable result." *Brown v. Frandsen*, 19 Utah 2d 116, 117, 426 P.2d 1021, 1022 (1967). Similarly, in the context of determining whether punitive damages are appropriate, the Utah Supreme Court has defined the terms "wilful and malicious" as requiring a showing of:

> 'such gross neglect of duty as to evince a reckless indifference of the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the person at fault is

conscious of the consequences of his carelessness.'

*Clayton v. Crossroads Equipment Co.,* 655 P.2d 1125, 1131 (Utah 1982) (quoting *Klingbiel v. Commercial Credit Corp.,* 439 F.2d 1303 (1971)). Prosser adds that "willful or wanton misconduct" identifies "an aggravated form of negligence, differing in quality rather than degree from ordinary lack of care." W. Prosser, *Law of Torts* § 34, at 184 (4th ed. 1971).

Here, the United States has directed the court to deposition testimony which indicates that federal officials were not aware that the land in question was being used as a gravel pit and therefore were without intent or knowledge, nor acted with reckless indifference, sufficient to raise any alleged act or omission to the level of "willful or malicious."

Amos Lowell Decker, Pony Express Resource Area Manager, BLM, Salt Lake City, Utah, who has supervised the use of BLM land in Utah County, including the land in question, since October, 1979 testified:

Q. Isn't it a fact, Mr. Decker, that the Bureau of Land Management, yourself and the other persons there, knew that Utah County was using the land as a gravel pit prior to May 16, 1980?

. . . .

A. I didn't know they were using it prior to 1980.

Q. You did not?

A. I did not.

Q. When you came into your position in October of 1979, from then until May of 1980 you never learned that Utah County was using that land as a gravel pit?

A. I didn't.

. . . .

Q. Now, to your knowledge did the Bureau of Land Management ever know that Utah County was using the land in question as a gravel pit prior to the time you received a claim?

A. To my knowledge, we didn't know that.

Q. The only knowledge that you had was a letter from Cammack, the deputy county surveyor, that actually puts the gravel pit over one township into a private property?

A. That's correct.

Q. Okay, what I am asking you is aside from these letters that we have reviewed, have you seen any document or has anyone else communicated to you from the Bureau that they knew or had reason to believe that Utah County was using that land for gravel pit extraction prior to the time you received the claim?

A. Well, this there (indicating), and then the claim. I mean the letter from Sterling Jones with the attachment from Cammack.

Q. Okay, but that one wasn't—

A. I didn't see it until after the claim.

Q. I understand that, but that letter misdescribes where the gravel pit is; is that correct?

A. That's correct.

Q. It puts the gravel pit on private property.

A. That's correct.

Q. So even if you had read the letter, as opposed to your subordinate, you still would not have known that they were conducting a gravel pit on public lands; is that correct?

A. Correct.

(Decker Depo. p. 16, 1.20 to p. 17 1.7, p. 31 1.11 to p. 32 1.12).

Clair Franklin Quilter, Natural Resource Specialist for the BLM who works with the public to mitigate surface disturbances on BLM land testified in his deposition that in March, 1980 the BLM had received a request from Utah County to use the site in question as a gravel pit and he further testified as follows:

Q. Now, did you ever have notice that this area was used as a gravel pit prior to that time?

A. No, other than the fact that you can see that there is symbols on topographic maps that indicate that it's been there for a long time.

Q. Did you ever see any of those prior to this investigation?

A. Any what?

Q. Any of the maps that reference that gravel pit?

A. Sure, I've seen the maps prior to that.

Q. Did you see an area that was being operated as a gravel pit?

A. It doesn't necessarily mean a gravel pit; just an excavation.

Q. All right, did you notice that was public land?

A. No, uh-uh (negative).

Q. You never saw a map that ties those two together, public land and excavation?

A. I've seen maps, but I never tied the boundaries there together, because it's very close.

(Quilter Depo. p. 16 1.23 to p. 17 1.17).

Finally, Lewis W. Kirkman, Jr., Wilderness Coordinator and Investigator for the BLM testified as follows:

Q. When did you have your first involvement with the gravel pit, in any capacity?

A. April 1, 1981.

Q. Would that have been after the claim had been filed with the government and you would have been asked by your superiors to do an accident investigation?

A. Exactly.

Q. Did you ever go to the gravel pit prior to that time?

A. No.

Q. You didn't know anything about how it was used?

A. Didn't know it existed.

Q. You did not know the gravel pit existed?

A. No.

Q. Or that a gravel pit in that area was on public lands?

A. No.

. . . .

Q. But you nor your subordinates, to your knowledge, ever went—never saw that area?

A. No.

(Kirkman Depo. p. 4 1.14–18, p. 5 1.3–5).

Thus, with the exception of a general reference on a map that the area in question was an excavation on BLM land there is no indication that any federal employee was aware that on the date of plaintiff's accident a gravel pit operation was being conducted on federal land. Indeed, the testimony indicates that at the time of the accident there was confusion as to whether the map indicated that the excavation was on federal or private land. Furthermore, the depositions indicate that no accidents have ever occurred at the gravel pit that have ever come to the attention of any employee of the BLM prior to the present case. Mr. Decker testified as follows:

Q. Did the Bureau of Land Management ever receive any notification of any prior accidents there, in the gravel pit?

A. No.

(Decker Depo. p. 59 1.16–18). *See also* Kirkman Depo. p. 13 1.23 to p. 14 1.5.

Upon review of the depositions, the court concludes as a matter of law that the conduct of the United States in this case was not "willful or malicious." In so doing, the court is mindful that summary judgment should be granted only when the moving party shows the absence of a genuine issue of any material fact, Fed.R.Civ.P. 56(c), and that the pleadings and other documentary evidence must be construed in favor of the opposing party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Coleman v. Darden*, 595 F.2d 533 (10th Cir.1979). However, "once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." *Id.* at 536. *See* Fed.R.Civ.P. 56(e); *See Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980).

In contrast to the specific evidence presented by the Federal government showing the lack of intent, knowledge or reckless indifference by government officials of any dangerous condition at the gravel pit, plaintiff's amended complaint and memorandum opposing this motion merely assert that government officials had such knowledge and intent. Plaintiff

has not presented the court with any depositions, answers to interrogatories, affidavits, or other evidence in support of that assertion. Because plaintiff has failed to raise any evidence to create a genuine issue of fact as to whether the conduct of the United States was "willful or malicious," summary judgment is appropriate.

### III. *Federal and State Mining Laws*

Defendant Swan refers to various state and federal mining laws as creating a separate duty of care which is not extinguished by the Utah Landowner Liability Act. Swan first argues that the Utah fencing statute creates such a separate duty raising triable issues of fact. That statute states:

> The owner, lessee or agent of any mine who by working such mine has caused, or may hereafter cause, the surface of the public domain, or of any highway, or other lands, to cave in and form a pit or sink into which persons or animals are likely to fall shall cause such pit or sink to be filled up, or to be securely enclosed with a substantial fence, at least 4½ feet high; . . . . Any person violating any of the provisions of this section is guilty of a misdemeanor, and shall be liable for all damages resulting.

Utah Code Ann. § 40-5-1 (1981). Swan also refers this court to the Utah Mined Land Reclamation Act, *id.* §§ 40-8-1 to -23, which requires the operator of a mining operation to submit a reclamation plan to the Utah Division of Oil, Gas and Mining, and to the federal law that authorizes the BLM to allow state and local governments to remove gravel from public lands, *see* 30 U.S.C. §§ 601-603.

The state and federal mining statutes and regulations promulgated thereunder do not create any independent duty that is unaffected by the Utah Landowner's statute. Violations of these statutes and regulations, even if proven, would constitute evidence of negligence or at most negligence per se. A mere showing of negligence would not be sufficient to overcome the immunity granted by the Landowner's statute. *See Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980) (Forest Service regulations did not create independent duty to warn of hazardous logging road); *Gard v. United States*, 594 F.2d 1230, 1235 (9th Cir.) *cert. den.*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979) (Nevada fencing statute did not create an independent duty to warn of hazardous abandoned mine shaft). Defendant Swan's argument must therefore be rejected.

### IV. *Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(h)(3) provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." F.R.Civ.P. 12(h)(3).

The basis of the court's subject matter jurisdiction in this action is the FTCA claim against the Federal government pursuant to 28 U.S.C. § 1346(b). Because the court has resolved the summary judgment issues in favor of the Federal government that cause of action is extinguished. This court, therefore, no longer has subject matter jurisdiction over the remaining claims. Hence, the state claims asserted by plaintiff against defendants Glen Otten, Ella Rae Otten, Utah County and Swan must be dismissed for want of subject matter jurisdiction.

For the reasons set forth herein, IT IS HEREBY ORDERED that defendant United States' motion for summary judgment is granted and the remaining state claims are dismissed for resolution in the proper state forum.