UNITED STATES of America, for the Use and Benefit of TRANS–COLORADO CONCRETE, INC., a Colorado corporation, Plaintiff,

v.

MIDWEST CONSTRUCTION COMPANY, a Nebraska corporation, and Insurance Company of North America, a Pennsylvania corporation, Defendants.

Civ. A. No. 86–K–958.

United States District Court, D. Colorado.

Feb. 18, 1987.

Michael Paul Medved, Hendricks and Hendricks, P.C., Colorado Springs, Colo., for plaintiff.

Paul T. Gefreh, Colorado Springs, Colo., and Frederick D. Stehlik, Stehlik, Smith, Trustin & Schweer, Omaha, Neb., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an action by the United States, on behalf of Trans-Colorado Concrete, to recover transportation costs incurred by plaintiff in delivering concrete to certain job sites for bridge repair and replacement at Fort Carson, Colorado. Plaintiff has moved for summary judgment. Jurisdiction is alleged under 40 U.S.C. § 270a–c, commonly known as the Miller Act.

The facts are undisputed. On August 20, 1984, Trans-Colorado Concrete, a concrete manufacturing company, entered into an agreement with defendant Midwest Construction Company to supply materials and perform labor for Midwest for the Fort Carson project. The three pages detailing the awarded bid and the bidding schedule

for plaintiff's services and materials constituted the only contract documents. On the bidding schedule only one location, Ellis St., was specifically mentioned as a delivery site. However, both parties also relied on a single purchase order, Invoice No. 2751, to determine the places of performance of the contract. That invoice simply stated "F.O.B. job site".

Plaintiff began work under the contract in January of 1985, supplying concrete to Midwest at the location identified by the parties as the Ellis-Chiles Road site. Around May, Midwest orally contacted plaintiff and requested additional concrete to be delivered to other bridge projects south of the original site and a substantial distance away. Although the parties agreed that the price of the concrete would remain the same, there is nothing in the pleadings or accompanying affidavits indicating a discussion between them concerning extra distance, short load, or waiting charges for the new deliveries.

From then to the end of October of 1985, plaintiff billed Midwest for charges based on transportation distances further than the original delivery site at Ellis-Chiles Road. For close to eight months, Midwest paid all these bills promptly in order to take advantage of an early payment discount. In what was to be its last payment to plaintiff, on a check dated January 3, 1986, Midwest deducted all distance, short load, and waiting charges paid since May, and sent plaintiff the reduced balance. Plaintiff now sues to recover that deducted amount.

■ I first find I have jurisdiction over the dispute. The Miller Act was enacted with the purpose of protecting those who furnish labor and materials in performance of a contract for construction of public works. See generally, *Borrett-Moore & Associates v. U.S. for Use of Harwell*, 367 F.2d 122 (10th Cir.1966). Facts pleaded by both parties demonstrate that an appropriate federal question exists under the aegis of the Act. Plaintiff furnished the requisite bond to the United States in satisfaction of 40 U.S.C. § 270a, and plaintiff is a "person(s) who furnish(es) labor or material in the prosecution of the work provided for in such contract" for purposes of 40 U.S.C. § 270b. Consequently, defendant's claim of improper jurisdiction is without merit. Additionally, since defendants have submitted neither brief nor motion to this court concerning their claim of improper venue, I strike that claim as well.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining the existence of any genuine issue of material fact, the record is construed in the light most favorable to the party opposing the motion. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). However, the adverse party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Whether a contract is ambiguous is a question of law for the court. *Geralnes B.V. v. City of Greenwood Village, Colo.*, 630 F.Supp. 644,649 (D.Colo.1986). Resolution of the contract ambiguity will necessarily resolve the principal question presented before me by the parties in this case. I find that under the facts provided, this action is appropriate for summary disposition.

I must first determine what law applies in this action. In my opinion in *United States v. Santa Fe Engineers, Inc.*, 515 F.Supp. 512, 514–15 (D.Colo.1981), I held that when there is a distinction between federal and state substantive law in Miller Act cases, federal law controls, although the interstices may be filled by incorporating state law. As in *Santa Fe*, Colorado law determines the terms of the contract in this case, while federal law determines whether, and to what extent, plaintiff's claim is cognizable under the Miller Act.

*Id.* Since I find the claim cognizable, I must look to relevant contract law to determine whether Trans-Colorado is entitled to payment of the additional distance charges.

Plaintiff's first argument is that the place of performance under the contract was modified by subsequent conduct or agreement by the parties. It claims that payment of distance charges became part of the contract between the parties, as a result of their conduct.

The contract expressly mandated that plaintiff would deliver the concrete "F.O.B. job site." 1973 Colo.Rev.Stat. 4–2–319(1)(b) defines this provision:

(1) Unless otherwise agreed the term F.O.B. ... at a named place, even though used only in connection with the stated price, is a delivery term which:

(b) When the term is F.O.B. the place of destination, the seller must at his own expense and risk transport the goods to that place ...

■ Official comment on Colorado statutes dealing with evidence of the final written expression of contract terms between parties, and with absence of specified place of delivery, imply that an "otherwise agreement" may be constituted by surrounding circumstances, usage of trade, course of dealing, or course of performance, as well as by the express language of the parties. 1973 Colo.Rev.Stat. 4–2–202 (n. 2); 1973 Colo.Rev.Stat. 4–2–308 (n. 4). While it is apparent from the bidding schedule that the first delivery site must have been the Ellis-Chiles Road site, and that under Colorado contract law plaintiff was responsible for transportation costs to that location, the subsequent oral agreement between the companies to deliver elsewhere formed an otherwise agreement. Such a modification needed no consideration to be binding. 1973 Colo.Rev.Stat. 4–2–209(1).

Furthermore, in spite of pronouncements to the contrary in Midwest's brief in opposition to the motion for summary judgment, "job site" is an ambiguous term in this contract. Although the construction of an unambiguous contract is amenable to summary resolution without resort to evidence extrinsic to the document itself, extrinsic evidence can be relevant when, after examination of the entire agreement, the terms are ambiguous. *Geralnes* at 649. The course of performance between the parties, wherein Midwest paid for the additional transportation costs for a substantial time after the modification, comprises extrinsic evidence which relevantly demonstrates that new delivery terms were agreed to and relied upon.

Since no express terms of the agreement negated the ability of the parties to modify, plaintiff is correct in stating that the contract was subsequently interpreted by both parties so as to allow for extra transportation costs. The mutual consent required to modify is reasonably inferrable from the conduct of both parties in charging and paying those costs, respectively. *Santa Fe* at 515.

Plaintiff's motion forwards a second claim that Midwest should be equitably estopped from asserting mistake in paying the extra charges when payment for those charges continued for nearly eight months after they were first billed.

■ In dispute over such a claim, both parties have presented the right arguments under the wrong labels. Waiver and equitable estoppel are doctrines easily confused. In contract law, waiver requires either clear unequivocal conduct or statements betraying an intent to relinquish known rights. See *Santa Fe* at 515. The waiver doctrine implies that such conduct or statements occur on the part of one who could seek to claim the right if he so desired. For what is at issue in this summary judgment motion, *waiver* would specifically concern Midwest's right not to pay for concrete deliveries not agreed to. Midwest's "right" to claim mistake is not at issue here.

■ Estoppel, on the other hand, focuses on the conduct of that person in favor of whom some obligation is contracted. For purposes of plaintiff's summary judgment motion, *estoppel* would specifically concern conduct by Trans-Colorado inconsistent

with its privilege to be paid for concrete deliveries agreed to under the contract. Equitable estoppel requires satisfaction of four elements:

1) the party estopped must know the facts;

2) he must intend that his conduct will be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

3) the latter must be ignorant of the true facts; and,

4) he must rely on the former's conduct to his injury.

*City and County of Denver v. Bergland,* 517 F.Supp. 155, 195–6 (D.Colo.1981).

Dispositive of the pleadings here is the *waiver* by Midwest of its right, under the agreement, not to pay delivery charges it considered contrary to the express or implied terms of the contract—not the *estoppel* of Trans-Colorado from claiming payment for deliveries made but not agreed to. Thus, it is unnecessary to address factual questions concerning detrimental reliance or knowledge of true conditions on the part of either party.

Contract law supports the doctrinal distinction made under the facts presented. 1973 Colo.Rev.Stat. 4–2–208 is instructive in this regard. It states in relevant part:

(1) Where the contract for sale involved repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement ...

(3) Subject to the provisions of section 4–2–209 on modification and waiver, such course of performance shall be relevant to show a waiver or modification of any term inconsistent with such performance.

■ The official comments following this section state that a course of performance is always relevant to determine the meaning of the agreement, and that where it is difficult to determine whether a particular act represents waiver of a term of the agreement, a finding of waiver is favored when needed to preserve the flexible character of commercial contracts and to prevent surprise or other hardship.

Even without the statutory leaning in favor of waiver of an express provision through subsequent conduct, there is no question that Midwest waived its right to stop payment of the extra costs in issue. Clearly, Midwest evinced an intent to relinquish that right via its conduct in paying Trans-Colorado's bills for such an extended period of time. *Santa Fe* at 515.

It is important to note Midwest cannot now be heard to argue that its own inefficient office procedures in accounting for contract payments should prevent plaintiff from being reimbursed for standard operating expenses. Payment for eight months demonstrates acquiesence without objection within the language of 4–2–208. Midwest, not Trans-Colorado, is responsible for the actions of its own employees in this regard.

■ Finally, plaintiff claims it is entitled to recover its expenses on the basis of quantum meruit. As I held in *Santa Fe*, recovery on that basis has been permitted under the Miller Act where extra labor was performed or extra materials furnished which were not contemplated by the original contract. *Santa Fe* at 516. However, I have already decided that the contract between the parties was modified. Plaintiff can now recover on the balance of the payment bond. 40 U.S.C. § 270b. Since the Miller Act does not substitute a cause of action in quantum meruit in *derogation* of the provisions of an express contract, *id.,* the new agreement between the parties must not allow plaintiff double recovery. Plaintiff's quantum meruit claim is dismissed.

IT IS THEREFORE ORDERED:

1. Plaintiff's motion for summary judgment is GRANTED;

2. Plaintiff's claim for recovery on the basis of quantum meruit is DENIED;

908

3. Defendant's claims of improper jurisdiction and venue are DISMISSED;
4. Costs awarded to plaintiff.