**MOUNT EMMONS MINING COMPANY, Plaintiff,**

v.

**Bruce BABBITT, Secretary of the United States Department of the Interior; The United States Department of the Interior, and the Bureau of Land Management, Defendants.**

Civil Action No. 94–Z–2978.

United States District Court,
D. Colorado.

May 3, 1996.

Nunc Pro Tunc April 9, 1996.

John R. Henderson, Boulder, CO, Don H. Sherwood, Denver, CO, for plaintiff.

Kathleen L. Torres, Assistant U.S. Attorney, Denver, CO, Gerald S. Fish, Dept. of Justice, Environment & Natural Resources, Washington, DC, for defendants.

## AMENDED ORDER

WEINSHIENK, District Judge.

The matter before the Court is Defendant's Motion For Summary Judgment. Specifically, defendant seeks dismissal of

plaintiff's claim pursuant to the Department of the Interior and Related Agencies Appropriations Act, 1995, Pub.L. No. 103–332, § 112, 108 Stat. 2499, 2519 (1994).

Pursuant to D.C.COLO.LR 72.1, this matter was referred to Magistrate Judge Donald E. Abram for the purpose of making a recommendation to the Court on Defendants' Motion For Summary Judgment. On January 31, 1996, Magistrate Judge Abram conducted a hearing on the issue, and on February 27, 1996, issued a Recommendation Of United States Magistrate Judge recommending that Defendant's Motion For Summary Judgment be granted. Under Fed.R.Civ.P. 72(b) the parties were given ten days to file written objections to the Recommendation. On March 14, 1996, plaintiff filed Plaintiff's Objections To Recommendation Of United States Magistrate Judge.

The Court has reviewed de novo all pertinent papers, including the Recommendation, plaintiff's Objections, and defendant's Response. After careful consideration, the Court is satisfied that the Magistrate Judge's Recommendation is thorough, well-reasoned, and correct.

■ Specifically, the Court agrees that plaintiff's application was not entitled to the moratorium exception. Section 113 of the mining moratorium legislation states that the moratorium shall not apply if the application has been filed with the Secretary of the Interior on or before September 30, 1994. This language has been interpreted to mean only applications which were forwarded to Washington, D.C. qualified as having been filed with the secretary on or before the enactment of the Act. *R.T. Vanderbilt Co. v. Babbitt*, No. CV–N–95–286–DWH(PHA), Report and Recommendation Of United States Magistrate Judge Phyllis Halsey Aitkins (D.Nev. Feb. 16, 1995). Magistrate Judge Abram concurred with this interpretation, and determined that since plaintiff's application had not been filed with the Secretary on or before September 30, 1994, Defendants Motion For Summary Judgment should be granted.

Plaintiff alleges that Magistrate Judge Abram's interpretation is in error. Plaintiff asserts that in passing the Department of the Interior and Related Agencies Appropriations Act, Congress never intended that pending applications need be filed with the Secretary of the Interior in Washington. Instead, plaintiff urges the Court to read the statute as requiring only that the application be filed with the Bureau of Land Management in the state where the land is located.

■ The Court is satisfied that Magistrate Judge Abram's interpretation is the correct one. As a preliminary matter, plaintiff's interpretation is contrary to that of the agency involved. Pursuant to §§ 112 and 113 of the Act, the Bureau of Land Management issued Instruction Memorandum No. 95–01, which provides: "Only the following applications may be processed: (1) Those for which a FHFC was signed before October 1, 1994 and; (2) those for which a FHFC was pending in Washington, D.C. as of September 30, 1994." An agency's construction of a statute will be upheld as long as it is reasonable and does not differ from the clear language of the statute. *See Pauley v. BethEnergy Mines*, 501 U.S. 680, 702, 111 S.Ct. 2524, 2537, 115 L.Ed.2d 604 (1991). The Court is not empowered to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *State of Kansas v. United States*, 995 F.2d 1505, 1509 (10th Cir. 1993).

In addition, plaintiff's interpretation is contrary to the plain language of the statute. Congress expressly stated that the application must be "filed with the Secretary." As such, Congress precluded plaintiff's interpretation that merely filing the application with the local Bureau of Land Management office is enough to exempt an application from the moratorium.

Since plaintiff's application was not forwarded to Washington, D.C. on or before September 30, 1994, the application was not timely filed with the Secretary of the Interior under § 113 of the Act. As a result, Defendant's Motion For Summary Judgment should be granted. Accordingly, it is

ORDERED that Defendant's Motion For Summary Judgment is granted, and the

Complaint and cause of action are dismissed with prejudice, each party to pay his or its costs.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ABRAM, United States Magistrate Judge.

This matter comes before the Court regarding Defendants' Motion for Summary Judgment, filed June 9, 1995. This Motion was referred to this Court for a recommendation on October 18, 1995. Plaintiff filed a Response on November 13, 1995, and Defendants filed a Reply on January 4, 1996. On January 31, 1996, this Court held a hearing on the Motion and took the matter under advisement. Magistrate Judge Donald E. Abram hereby makes the following Recommendation.

## I. BACKGROUND

This case arises out of The General Mining Law of 1872, 30 U.S.C. §§ 22–54. That law allows individuals to explore land in the public domain in search of valuable mineral deposits and sets forth the procedures for securing legal title to a mineral claim. *See Independence Mining Co. v. Babbitt*, 885 F.Supp. 1356, 1357 (D.Nev.1995). On December 30, 1992, Plaintiff filed an application for a patent to ten lode mining claims in Gunnison County, Colorado with the Colorado State Office, Bureau of Land Management

("BLM"). On September 15, 1994, the BLM accepted a check for $875 as payment of the purchase price for the ten claims.

On March 2, 1993, the Secretary of the United States Department of the Interior ("Secretary") issued Order No. 3163 revoking the delegation of authority to the BLM to issue First Half Final Certificates ("FHFC")[1] and patents. Pursuant to the Secretary's Order, the BLM would continue to receive mineral patent applications, but only the Secretary could issue FHFCs and grant mineral patents.

On September 30, 1994, Congress enacted the Department of the Interior and Related Agencies Appropriations Act, 1995, Pub.L. No. 103–332, § 112, 108 Stat. 2499, 2519 (1994) ("mining moratorium legislation"). Section 112 of the mining moratorium legislation prohibits the Department of the Interior from spending any funds during fiscal year 1995 to accept or process applications for mineral patents.[2] Pursuant to § 113 of the mining moratorium legislation, the moratorium does not apply if the Secretary determines that the applicant fully complied with all requirements established under the mining laws by September 30, 1994.[3] Pursuant to §§ 112 and 113, the BLM issued Instruction Memorandum No. 95–01, which provides: "Only the following applications may be processed: (1) Those for which a FHFC was signed before October 1, 1994 and; (2) those for which a FHFC was pending in Washington, D.C. as of September 30, 1994."

---

1. The FHFC, or the first half final certificate, certifies that the applicant has complied with the Mining Law and confirms that equitable title is vested in the applicant, subject to the mineral examiner's confirmation of the discovery of a valuable mineral deposit. *See Independence Mining Co.*, 885 F.Supp. at 1358, n. 3.

2. Section 112 of the mining moratorium legislation states:
 If the House–Senate Conference Committee on H.R. 322 fails to report legislation which is enacted prior to the adjournment of the 103d Congress sine die, none of the funds appropriated or otherwise made available pursuant to this Act shall be obligated or expended to accept or process applications for a patent for any mining or mill site claim located under the general mining laws.
 Department of the Interior and Related Agencies Appropriations Act, 1995, Pub.L. No. 103–332, § 112, 108 Stat. 2499, 2519 (1994).

3. Section 113 of the mining moratorium legislation states:

 The provisions of section 112 shall not apply if the Secretary of the Interior determines that, for the claim concerned: (1) a patent application was filed with the Secretary on or before the date of enactment of this Act, and (2) all requirements established under ... sections 2329, 2330, 2331, and 2333 of the Revised Statutes (30 U.S.C. 35, 36, and 37) for placer claims, and section 2337 of the Revised Statutes (30 U.S.C. 42) for mill site claims, as the case may be, were fully complied with by the applicant by that date.
 Department of the Interior and Related Agencies Appropriations Act, 1995, Pub.L. No. 103–332, § 113, 108 Stat. 2499, 2519 (1994).

*See* Complaint, Exhibit 5. Because a FHFC had not been issued to Plaintiff, and because Plaintiff's application was not pending in Washington, D.C., Defendants refused to further process Plaintiff's application.

On December 30, 1994, Plaintiff filed this action challenging Defendants' refusal to continue processing Plaintiff's mineral patent application. Plaintiff requested mandamus relief pursuant to 28 U.S.C. § 1361 or an order compelling agency action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).

## II. ANALYSIS

 Summary judgment is a drastic remedy which is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir.1988). "One of the principal purposes of the summary judgment rule is to isolate and [di]spose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, the court views the factual record and any reasonable inferences arising from it in the light most favorable to the nonmoving party. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). Summary judgment may be granted if the court concludes that, based on the record as a whole, no "rational trier of fact" could find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The summary judgment procedure is particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2733 at 366 (2d ed. 1983).

The facts in this case are not in dispute. Rather, the dispute involves the proper interpretation of the mining moratorium legislation, namely, whether Plaintiff's application is exempt from the moratorium pursuant to § 113. Stated another way, the question presented by this case is whether the Defendants properly construed the mining legislation moratorium.

 Judicial review of an agency decision is conducted pursuant to an arbitrary and capricious standard of review. 5 U.S.C. § 706(2)(A) (1977) (reviewing court shall set aside agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). The agency's decision is given considerable weight, and the court may not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *State of Kansas v. United States*, 995 F.2d 1505, 1509 (10th Cir.1993). The agency's construction of a statute will be upheld so long as it is reasonable and does not conflict with the clear language of the statute. *See Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702, 111 S.Ct. 2524, 2537, 115 L.Ed.2d 604 (1991) (to warrant deference, agency's construction need be only reasonable and "need not be the best or most natural one by grammatical or other standards"); *Exxon Corp. v. Lujan*, 970 F.2d 757, 762 (10th Cir.1992). If the intent of Congress is clear, both the court and the agency must give effect to that intent. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

Defendants claim that their construction of §§ 112 and 113 of the mining moratorium legislation, as reflected in Memorandum No. 95–01, is reasonable. To support their construction, Defendants point to the legislative history of the mining moratorium legislation. The Conference Report on H.R. 4602 (the bill ultimately enacted as Pub. Law 103–332) states:

The managers agree that those applications having received first-half-final certificates on or before the date of enactment of this Act are not subject to the prohibition in Section 112. In addition, the managers agree that those applications for first-half-final certificates currently pending in the Office of the Solicitor in Washington, D.C. or elsewhere in the Department of the Interior in Washington, D.C. will not be subject to the moratorium in Section 112.

H.R. Rept. No. 103–740, 103d Cong., 2d Sess. at 37 (1994).

Plaintiff claims that the Secretary's interpretation is in conflict with the plain meaning of the mining moratorium legislation. Plaintiff argues that § 113 exempts from the moratorium those applications in which the applicants fully complied with all requirements under the mining law. Furthermore, Plaintiff claims that Defendants' substitution of a "location-based test" for an applicant's compliance with the mining law conflicts with the Congressional intent behind § 113.

Defendants dispute Plaintiff's claim that its application had been fully processed. Defendants argue that a mining patent applicant can not fully comply with the mining laws until after a FHFC is issued, because it is only after the FHFC is issued that the BLM performs a mineral examination to determine if a valuable deposit exists on each mining claim encompassed by the patent application. Therefore, the payment of the purchase price does not mean that the applicant has done all that the law requires him to do.

The proper interpretation of the mining moratorium legislation was recently addressed in *R.T. Vanderbilt Co. v. Babbitt,* No. CV–N–95–286–DWH(PHA), Report and Recommendation of U.S. Magistrate Judge Phyllis Halsey Atkins (D.Nev. Feb. 16, 1995). At the outset, Magistrate Judge Atkins found that Defendants' interpretation of § 113 was entitled to deference. *Id.,* slip op. at 23. Then, Judge Atkins determined that Defendants reasonably interpreted the first requirement of § 113—that a patent application must have been "filed with the Secretary on or before the enactment of the Act"—to mean that applications which had not been forwarded to Washington, D.C. did not qualify as having been filed with the Secretary. *Id.* at 23–24. This conclusion is sound given Congress' unambiguous intent that the application had to be filed "with the Secretary." Therefore, Congress expressly precluded Plaintiff's interpretation of § 113 that the mere filing with the local BLM office is sufficient to exempt an application from the moratorium.

■ Judge Atkins also determined that Defendants reasonably interpreted the sec-ond requirement of § 113 to mean that the FHFC had to be signed before October 1, 1994. *Id.* at 24. Because the FHFC certifies that the applicant has satisfactorily complied with the statutory requirements for the particular type of claim, Defendants correctly relied on the issuance of the FHFC as a measure for determining compliance with the statutory requisites. *See Independence Mining Co.,* 885 F.Supp. at 1358 n. 3 (FHFC certifies that applicant has satisfactorily complied with the "paperwork" requirements of the Mining Law). Consistent with the Secretary's reasonable interpretation of § 113, Defendants reasonably concluded that Plaintiff had not met the requirements of § 113. Plaintiff's application was not pending in Washington, D.C., and a FHFC had not been issued. As such, Plaintiff's application was not entitled to the moratorium exemption.

■ Plaintiff next argues, in footnote nine of its response, that the Colorado State Office of the BLM "unjustly delayed mailing the Mt. Emmons application to Washington during the months of October, November, and December, 1994." Response at 9 n. 9 (this two-sentence footnote is the only place in Plaintiff's brief where this argument is raised). An analogous argument was rejected in *Vanderbilt.* In *Vanderbilt,* Plaintiff tendered the purchase price on October 20, 1994. *Vanderbilt,* slip op. at 26. Plaintiff argued that defendants' failure to continue processing its mineral applications between October 20, and December 1, 1994 was unreasonable. *Id.* The court considered six factors in determining that the delay of less than two months was not unreasonable. *Id. See also Telecommunications Research & Action Ctr. v. F.C.C.,* 750 F.2d 70, 79–80 (D.C.Cir.1984) (listing six factors to consider for claims of agency delay). These factors apply equally to Mt. Emmons. First, the court noted that there is no statutorily defined time frame for completing the processing of mineral patent applications. *Vanderbilt,* slip op. at 26. Second, given that a two year delay previously has been tolerated, *see Independence Mining Co.,* 885 F.Supp. at 1358, a two and a half month delay does not offend the "rule of reason." Third, because the delay impacts economic as opposed to

health or welfare concerns, it is more tolerable. Fourth, if Defendants had continued processing Plaintiff's application, it could have slowed down the processing of those applications which were further along in the patent applications process and on which work could continue after the moratorium went into effect. Fifth, although Plaintiff has been deprived of a more complete title to the land, Plaintiff has not lost its ability to mine the land. Finally, Plaintiff has not pointed to any impropriety lurking behind the delay. Consequently, Defendants' failure to process Plaintiff's application between September 19, and December 1, 1994 is not unreasonable.

▮ Finally, Plaintiff's claim for mandamus relief also must be denied. To grant the extraordinary remedy of mandamus, "the court must find: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and preemptory duty on the part of the defendant to do the action in question; and (3) no other adequate remedy is available." *Wilder v. Prokop,* 846 F.2d 613, 620 (10th Cir.1988). *See also John E. Burns Drilling v. Central Bank of Denver,* 739 F.2d 1489, 1493 (1984). Here, Plaintiff does not have a clear right to the relief sought because the Defendants still have discretionary duties to perform in connection with Plaintiff's application, such as conducting mineral examinations, preparing mineral reports, and deciding whether to issue the final certificate. *See Independence Mining Co.,* 885 F.Supp. at 1360 ("Mandamus relief is inappropriate with respect to the claims awaiting mineral examinations and reports"); *Vanderbilt,* slip op. at 32 (defendants' duty to process mineral patent applications is not ministerial because it is subject to agency discretion). Therefore, mandamus relief should be denied.

THEREFORE, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment be granted.

FURTHER, IT IS ORDERED that pursuant to Fed.R.Civ.P. 72(b), the parties herein shall have ten (10) days after service hereof to serve and file written, specific objections hereto. If no such objections are timely filed, the Magistrate Judge's proposed findings and recommendations may be accepted by the District Judge and appropriate orders entered without further notice.

DATED at Denver, Colorado, this 27th day of February, 1996.