**US WEST, INC.; Thunderbird Retirement Resort; Chasar ad Group, Subsidiary of Chasar Group, Inc.; Vista Village Mobile Home Park, Ltd.; Quail Hill Mobile Home Park, Ltd.; Woodshire East Mobile Home Park, Ltd; M & R Leasing, Inc.; Machining Data Technologies, Inc.; and Feldberg Designs Corp., Plaintiffs,**

v.

**BUSINESS DISCOUNT PLAN, INC.; National Marketing Center, Inc.; Verification Specialists, Inc. and Independent Verification, Inc., Defendants.**

No. Civ.A. 99–B–374.

United States District Court,
D. Colorado.

Sept. 25, 2000.

William C. Brittan, Campbell, Bohn & Leffert, LLC, Denver, CO, Joyce Grant, U.S. West Communication, Inc., Denver, CO, for plaintiff/petitioner.

Michael L. Glaser, Michael D. Murphy, Michael J. Santisi, Hali8gman, Lottner, Rubin & Fishman, P.C., Denver, CO, Alan B. Pick, Brian D. Boydston, Patrick E. Michela, Pick & Boydston, LLP, Los Angeles, CA, for defendant/respondent.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Defendants Business Discount Plan, Inc. (BDP) and National Marketing Center, Inc. (NMC) move for judgment on the pleadings and summary judgment. Defendants Verification Specialists, Inc. (VSI) and Independent Verification, Inc. (IVI) move to dismiss pursuant to Rule 12(b)(6). Plaintiffs oppose the motions. The motions are adequately briefed and oral argument would not materially aid their resolution. For the reasons set forth below, I grant in part and deny in part the motions. Jurisdiction exists under 28 U.S.C. § 1331.

### I.

The following facts are undisputed unless otherwise noted. Plaintiff U.S. West provides telecommunications services in fourteen western states including Colorado. Defendant BDP is a switchless reseller of AT & T long-distance telephone service. In their complaint filed on February 25, 1999, Plaintiffs allege that Defendant BDP employed Defendant NMC to telemarket Defendant BDP's long-distance service. Plaintiffs also allege Defendant BDP employed Defendants VSI and IVI to verify that consumers Defendant NMC claimed it had successfully solicited on behalf of Defendant BDP did in fact agree to switch their long-distance service to Defendant BDP. The Federal Communications Commission (FCC) requires third parties to conduct the verification procedures allegedly provided by Defendants VSI and IVI to protect against unauthorized changes of consumers' long distance providers—a practice known as "slamming."

Plaintiffs Thunderbird Retirement Resort (Thunderbird), Chasar Ad Group (Chasar), Vista Village Mobile Home Park, Ltd. (Vista Village), Quail Hill Mobile Home Park, Ltd. (Quail Hill), Woodshire East Mobile Home Park, Ltd. (Woodshire East), M & R Leasing, Inc. (M & R), Machining Data Technologies, Inc. (Machining Data), and Feldberg Designs Corp. (Feldberg) (collectively Customer Plaintiffs) claim that Defendants conspired to slam their long distance service. Customer Plaintiffs contend that as a result of this conspiracy Defendant BDP became their long distance provider. Plaintiff U.S. West alleges that Defendant BDP infringed the U.S. West trademark by indicating or suggesting in its marketing that Plaintiff U.S. West was somehow associated with, or had endorsed, Defendant BDP's "Business Discount Plan." The claims alleged in the *Amended Complaint* are: violation of 47 U.S.C. § 258, false advertising under 15 U.S.C. § 1125(a), trademark infringement/false association under the Lanham Act, trademark dilution under 15 U.S.C. § 1125(c), common law unfair competition, tortious interference with prospective economic advantage, violation of the Colorado Consumer Protection Act, unjust enrichment, and civil conspiracy.

In March 1998, a proposed class action was filed in federal district court for the District of Central California naming, *inter alia*, BDP as a defendant. *See Allen Lund Company v. AT & T Corp.*, Case No. CV–98–1500–DDP(AJWx) (C.D.Cal.) (*Lund*). The *Lund* plaintiffs alleged that Defendant BDP and others slammed their long distance service. On February 16, 2000, the *Lund* court certified a plaintiffs class for settlement purposes pursuant to Fed.R.Civ.P. 23(b)(3) that included: "[a]ll persons who were switched to and billed for Business Discount Plan, Inc. long-distance telephone service between June 12, 1996, inclusive, and July 23, 1999, inclusive." *Summary Judgment Motion*, Ex. B, at para. 1 (*Lund* Settlement Order). The *Lund* Settlement Order also approved the "Notice of Pendency of Class Action, and Proposed Settlement and Settlement Hearing ("Notice")," *id.* at para. 2, and deemed the proposed method of disseminating the Notice "the best

notice to the Class practical under the circumstances, and satisfied the requirements of due process and Federal Rule of Civil Procedure 23." *Id.* Finally, the *Lund* Settlement Order held that all members of the *Lund* class who did not "opt-out" of the settlement would be

> forever enjoined from commencing or prosecuting ... a class action, a derivative action, or any other action against the Released Persons (as defined in the Stipulation) and each and all of their respective Related Parties (as defined in the Stipulation), past and present, with respect to, based on, arising from, or for any and all Released Claims (as defined in the Stipulation) or causes of action, including Unknown Claims (as defined in the Stipulation) that have been or could have been asserted by any Class Member.

*Id.* at para. 7.

In this case, Defendants BDP and NMC moved for judgment on the pleadings. Defendants VSI and IVI moved to dismiss pursuant to Rule 12(b)(6). Plaintiffs then moved for rulings on whether I would convert the Rule 12(b)(6) and 12(c) motions into ones for summary judgment. In response, I ruled that "[t]he court will in due course determine whether to convert" the motions. Thereafter, Defendants BDP and NMC moved for summary judgment.

## II.

Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The very purpose of a summary judgment motion is to assess whether a trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that demonstrate the absence of genuine issues for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992).

Once a properly supported summary judgment motion is made, the non-moving party has the burden of showing that issues of undetermined material fact exist. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In so doing, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Unsupported allegations "without any significant probative evidence tending to support the complaint" are insufficient, *White,* 45 F.3d at 360 (internal quote and citation omitted), as are conclusory assertions that factual disputes exist. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if genuine issues of material fact exist. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.,* 132 F.3d 1316, 1319 (10th Cir.1997).

In ruling on summary judgment, I must view the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See id.* If no reasonable juror could find for the non-moving party based on the evidence present in the motion and response, then summary judgment is proper and a trial is unnecessary. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment should not enter if a reasonable trier of fact could return a verdict for the nonmoving party. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505; *Mares,* 971 F.2d at 494.

## III.

### A.

As noted above, Defendants BDP and NMC move for judgment on the pleadings and summary judgment, and Defendants VSI

and IVI move to dismiss pursuant to Rule 12(b)(6). Attached to the Rule 12(c) motion is an affidavit in which Craig Konrad testified that, *inter alia*, Defendant BDP slammed Plaintiff Chasar on December 8, 1995, and Plaintiffs Vista Village, Quail Hill, Woodshire East, and Feldberg Designs filed complaints with the FCC prior to filing the *Complaint* in this case. In their Rule 12(b)(6) motion, Defendants VSI and IVI reference and rely on Mr. Konrad's affidavit. *See, e.g., Rule 12(b)(6) Motion* at 13, nn. 3–4.

In their motion asking for a ruling on whether I would convert the Rule 12(b)(6) and 12(c) motions into ones for summary judgment, Plaintiffs oppose conversion because they claim they need to undertake discovery in order to rebut the factual assertions made by Mr. Konrad in his affidavit. After I denied Plaintiffs' motion stating that I would make a decision "in due course" regarding whether to convert the Rule 12(c) motion, Plaintiffs filed a consolidated response to the Rule 12(b)(6) and 12(c) motions (*Plaintiffs' Consolidated Response*) to which they attached a number of "Exhibits," and in which they argued that Mr. Konrad's assertions in his affidavit cannot be accepted because the adjudication of factual disputes is not proper in the context of Rule 12 motions.

■ Typically, if I decide to convert a Rule 12(c) motion into a Rule 56 motion, I must provide the parties with notice to avoid unfair surprise. *See Nichols v. United States*, 796 F.2d 361, 364 (10th Cir.1986). Nevertheless, "when a party [references] material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion." *Wheeler v. Main Hurdman*, 825 F.2d 257, 260 (10th Cir.) *cert. denied* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987) (citing *Nichols*, 796 F.2d at 364). *See Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 859 n. 2 (10th Cir.1996) (following *Wheeler*). Here, in response to the Rule 12 motions. Plaintiffs attached and referenced materials outside of the pleadings. In addition, Plaintiffs' motion for a determination whether I would convert Defendants' motion to one for summary judgment reveals that

Plaintiffs were very much aware of that possibility. *See Whitesel v. Sengenberger*, 222 F.3d 861, 865 (10th Cir.2000) (Plaintiff's "request[ ] [that] the court [ ] treat the motion to dismiss as one for summary judgment to the extent it relied on matters outside of the complaint. . . . [indicated that] he had notice that the court might convert the motion."). Consequently, unfair surprise is not an issue, and I will treat Defendants' motions as ones for summary judgment.

Conversion is also not unfair here because Plaintiffs have taken inconsistent positions with respect to the factual assertions in Mr. Konrad's affidavit. By arguing in their motions for a ruling on conversion, and their consolidated response to Defendants' Rule 12 motions, that they need to undertake discovery in order to rebut Mr. Konrad's assertions, and that such assertions cannot be accepted because factual disputes cannot be adjudicated in the Rule 12 context, respectively, Plaintiffs effectively deny these assertions. Nevertheless, in their response to the summary judgment motion, Plaintiff Chasar accepts Mr. Konrad's assertion regarding the date Plaintiff Chasar was slammed, *see Plaintiff's Summary Judgment Response* at 11–12 ("The affidavit of Craig Konrad ... indicates that Chasar was switched to BDP's long distance service on December 8, 1995, and thus falls outside of the period [defined in the Class Notice for inclusion in the *Lund* class]"), and Plaintiffs Vista Village, Quail Hill, Woodshire East, and Feldberg Designs effectively accept Mr. Konrad's claim that they filed complaints with the FCC. *See id.* at 12–13 n. 8 ("Customer Plaintiffs Vista Village [ ], Quail Hill [ ], Woodshire East [ ], and Feldberg all communicated with the FCC regarding BDP's slamming activities, and thus therefore appear to be excluded from the *Lund* class pursuant to the definitions established in that case"). Plaintiffs Chasar, Vista Village, Quail Hill, Woodshire East, and Feldberg Designs accept these factual assertions in order to evade summary judgment on the question whether they are members of the *Lund* class. As explained below, if these Plaintiffs are members of the *Lund* class, this case must be dismissed. Plaintiffs thus seek to have it both ways—they both admit and deny the factual allega-

tions in Mr. Konrad's affidavit in order to undercut arguments made in separate motions. Under these circumstances, I see no unfairness in converting the Rule 12(b)(6) and 12(c) motions into ones for summary judgment. I thus address all of the arguments in the Rule 12(b)(6), 12(c), and 56 motions under a summary judgment standard.

### B.

Defendants BDP and NMC argue that Customer Plaintiffs' claims must be dismissed because those Plaintiffs were members of the *Lund* class. Specifically, Defendants BDP and NMC claim that the *Lund* class representatives named Defendant BDP and T. David Jenkins, and alleged both that Mr. Jenkins was "the sole owner, officer, and director" of both Defendant BDP *and* Defendant NMC, *Defendants' Summary Judgment Motion*, Ex. A, at paras. 27–28 (Second Amended Complaint in *Lund*), and that Defendant BDP, working through Defendant NMC, slammed their long distance phone service. *See id.* at paras. 28–29. Defendants BDP and NMC argue that because the *Lund* Settlement Order releases Defendants BDP and NMC from any further legal claims concerning the same nucleus of facts, and because a notice of the proposed settlement (*Lund* notice) was sent to each of the Customer Plaintiffs except Plaintiff Feldberg, the claims of the Customer Plaintiffs' except Plaintiff Feldberg must be dismissed.

Plaintiffs Machining Data, M & R, and Thunderbird respond that they did not receive notice of either the existence of the *Lund* action, or the settlement terms thereof. All of the Customer Plaintiffs argue that these omissions taint the whole notice process employed by the *Lund* Defendants rendering it insufficient with respect to them. In addition, Customer Plaintiffs further argue both that the "Notice" and "Claim Form" did not provide sufficient notice that the *Lund* settlement would release Defendant NMC from any further legal claims, and they effectively opted out of the *Lund* class action by filing the Complaint in this action on February 25, 1999. Finally, Plaintiffs Chasar, Vista Village, Quail Hill, Woodshire,

and Feldberg contend they are not bound by the *Lund* Settlement Order because they do not fall within the class definition. I will address each argument and response in turn.

### 1.

■ I find unpersuasive Plaintiff's argument that the *Lund* notice was insufficient because three of the Plaintiffs here did not receive it. Under Rule 23(c)(2), a court hearing a class action must "direct to the members of the class the *best notice practicable under the circumstances* including individual notice to all members who can be identified through reasonable effort.'" Rule 23(c)(2) (emphasis added). Under this standard, individual notice is "mandatory" and the "requirement may not be relaxed based on high cost." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–77, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). "Actual receipt of notice is not necessary, however, so long as the best practicable notice was given to absent class members." *Burns v. Copley Pharmaceutical, Inc.*, 132 F.3d 42, 1997 WL 767763, *2 (10th Cir.1997) (unpublished opinion) (citing *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir.1994)). *See also In re Blinder, Robinson & Co.*, 124 F.3d 1238, 1243 (10th Cir.1997) (in a non-class action context, holding that "due process does not require that the interested party actually receive the notice") (citing *U.S. v. Clark*, 84 F.3d 378, 380 (10th Cir. 1996)).

Because *Burns* is an unpublished opinion, it is not binding precedent under C.T.A.10 Rule 36.3 ("[u]npublished orders and judgments of this court are not binding precedents, except under the doctrines of law of the case, res judicata, and collateral estoppel"). Moreover, the Tenth Circuit has not addressed the question whether actual receipt is necessary under Rule 23(c)(2) in a published opinion. Nevertheless, *Burns* can be cited if "it has persuasive value with respect to a material issue that has not been addressed in a published opinion." C.T.A.10 Rule 36.3(B)(1).

I find *Burns* persuasive in light of its consistency with the language of the rule, *see* Rule 23(c)(2) ("best notice practicable under

the circumstances"), the decisions of all of the other federal courts of which I am aware that have addressed the issue, *see Silber v. Mabon,* 18 F.3d 1449, 1453–54 (9th Cir.1994); *In re Prudential Secs. Inc. Ltd. Partnerships Litig.,* 164 F.R.D. 362, 368 (S.D.N.Y.), *aff'd without opinion,* 107 F.3d 3 (2d Cir.1996); *In re VMS Limited Partnership Sec. Litig.,* No. 90 C 2412, 1995 WL 355722 at *2 (N.D.Ill.) ("the fact that the notice given did not reach [a class member], while unfortunate, does not alter the fact that such efforts constituted the best notice practicable."); *McCubbrey v. Boise Cascade Home & Land Corp.,* 71 F.R.D. 62, 73 (N.D.Cal.1976) ("In declining to impose a requirement of personal service on absentees and holding the less expensive postal service adequate to satisfy constitutional requirements, *Mullane* dictates only 'best efforts'—not a guarantee of success."), and plain common sense. After all, if *actual* notice were the rule, large class actions would rarely pass the Rule 23(c)(2) test. Plaintiffs also have not indicated why the holding in *In re Blinder, Robinson & Co.,* a case not involving a class action, that "due process does not require that the interested party actually receive the notice" cannot be applied to class-actions. *In re Blinder, Robinson & Co.,* 124 F.3d at 1243 (citing *U.S. v. Clark,* 84 F.3d 378, 380 (10th Cir.1996)). I will thus apply the *Burns* rule here.

■ Under *Burns,* that Plaintiffs Machining Data, M & R, and Thunderbird did not receive actual notice of the provisional class certification and settlement is not dispositive. Instead, the question is whether Defendants satisfied their obligations to provide the "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2). Plaintiffs do not identify why Defendants' notice in *Lund* was deficient. Instead, they merely claim that three out of the seven Customer Plaintiffs did not receive notice, and state that "[t]his ... omission factor taints the procedures under which the mailings were performed." *Plaintiffs' Summary Judgment Response* at 8. They also state that the same counsel have represented Defendants BDP and NMC in both *Lund* and this case, but nevertheless failed to personally provide notice of the *Lund* Settlement Order to the Customer Plaintiffs in this case.

The "Order Granting Final Approval of Proposed Class Action Settlement and Judgment" in *Lund* indicates that the District Court there found that mailing the "Notice of Pendency of Class Action, and Proposed Settlement and Settlement Hearing" "to the last known addresses of all identifiable Class members, as determined by [Defendant] BDP's records" was the "best notice ... practical under the circumstances." *Defendants' Motion for Summary Judgment,* Ex. B, at para. 3. An affidavit submitted by Robert K. Goldman indicates that his employer, Gilardi & Co., mailed the Notice to all of the last known addresses included in "two data bases" provided by Defendant BDP. *See id.,* Ex. C at para. 2–4. According to Mr. Goldman, included in those two databases were addresses for Plaintiffs Machining Data, M & R, and Thunderbird. *Id.* at para. 4. In addition, Plaintiffs admit that Customer Plaintiffs Vista Village, Quail Hill, and Woodshire received the Notice and Claim Form, *see Plaintiffs' Summary Judgment Response* at 6, n. 6, and state that they are unaware whether Customer Plaintiff Chasar received them. *Id.* at 6, n. 7.

Finally, Customer Plaintiffs have cited no authority for the proposition that counsel for Defendants BDP and NMC in both *Lund* and this case were required to personally notify them of the events transpiring in *Lund.* In fact, Tenth Circuit authority supports the opposite proposition. *See In re Four Seasons Securities Laws Litigation,* 502 F.2d 834, 841 (10th Cir.1974) (*Four Seasons* ). *Four Seasons* involved three separate court actions. In one, the State of Ohio in a Chapter X proceeding sought to reclaim funds previously loaned to Four Seasons Nursing Centers of America (Four Seasons). *Four Seasons,* 502 F.2d at 836. The State of Ohio also filed three separate suits, including *State of Ohio v. Crofters,* against various Defendants including the President of Four Seasons regarding the same transactions. *Id.* at 836–37. Finally, holders of securities issued by Four Seasons brought individual actions against Four Seasons that were consolidated into one large class action against,

*inter alia,* the President of Four Seasons. *Four Seasons,* 58 F.R.D. 19, 28 (W.D.Okl. 1972).

The attorneys for the Trustee of Four Seasons in the Chapter X proceeding simultaneously participated in negotiations in the Chapter X proceeding, *and* the class action. *Four Seasons,* 502 F.2d at 838. During the course of negotiations regarding the Chapter X proceeding, attorneys for the State of Ohio negotiated with attorneys for the Trustee of Four Seasons, and "met with" counsel for some of the defendants in the class action. *Id.* At no point during these negotiations did the Trustee's attorney, or the attorneys for the *Four Seasons* defendants, tell the representatives for the State of Ohio that their state was a member of the *Four Seasons* class action. *Id.*

After a settlement was reached in the class action, the Trustee's attorney inaccurately told the attorneys for the State of Ohio that the *Four Seasons* "had been settled around Ohio." *Id.* In fact, although the State of Ohio was never aware it was a member of the *Four Seasons* class action until after the "opt-out" period expired, it was ultimately deemed a member of the class. The *Four Seasons* settlement, *inter alia,* barred any further claims against the defendants. *Id.* at 839. After the *Four Seasons* opt-out period expired, the President of Four Seasons raised the question whether the claims in *Crofters* against him were barred by the class settlement. *Id.* The State of Ohio then moved the *Four Seasons* court for relief from its class action judgment pursuant to Rule 60.

The District Court in *Four Seasons* granted the Rule 60 motion in part because of the "lulling effect" on the State of Ohio caused by the failure of the Trustee's attorney, and the attorneys for the defendants in the *Four Seasons* class action, to instruct attorneys for the State of Ohio that it was a member of the class. *Four Seasons,* 59 F.R.D. 667, 683 (W.D.Okl.1973). In reversing that decision, the Tenth Circuit noted the "lulling effect" basis of the District Court's opinion, but nevertheless held that "due process was satisfied." *Id.* at 843. The Tenth Circuit in *Four Seasons* thus refused to adopt the type of

personal notification Plaintiffs argue for here.

Under these circumstances, Customer Plaintiffs have failed to provide specific facts showing the existence of a genuine issue to be tried regarding the sufficiency of the notice provided in *Lund. See Otteson,* 622 F.2d at 519. I conclude, therefore, that the apparent failure of the Notice and Claim Form to reach Plaintiffs Machining Data, M & R, and Thunderbird does not render *Lund*'s notice procedures deficient either generally or with respect to Plaintiffs Machining Data, M & R, and Thunderbird. *See Burns,* 132 F.3d 42, 1997 WL 767763, *2.

2.

■ The argument that the "Notice" and "Claim Form" did not provide sufficient notice the *Lund* settlement would release Defendant NMC from any further legal claims is also unconvincing. "As a practical matter, notice cannot include all information that might be of concern to absentee class members." 2 *Newberg on Class Actions* § 8.31 at 8–102 (3d ed.1992). Consequently, "some procedure [should be provided] whereby class members, seeking more detailed information, can examine relevant data." *Id.* Sufficient information should be provided "so that each class member can make a rational judgment on whether to exclude himself from the action." 7B Charles Alan Wright et al., *Federal Practice and Procedure,* § 1787 at 220 (2d ed.1986). *See* 2 *Newberg on Class Actions,* § 8.04 at 8–17 ("the purpose of [Rule 23(c)(2) is to] allow[ ] parties to make conscious choices that affect their rights in a litigation context.").

Here, the Notice states in relevant part:

If approved, the Settlement and the Final Judgment entered in accordance with the terms of the Settlement will dismiss and release all Released Claims as defined below. This release and dismissal will bar any further suit by or on behalf of Lund or any Class Member (other than those who timely and validly request exclusion from the Class), and instead Lund and the Class Members will obtain the rights and benefits accorded to them under the Settlement. "Released Claims" means any and

all rights, claims, actions, allegations, causes of action and demands of every nature and kind, including "Unknown Claims" (as defined below), which Lund or any Class Member (other than those who timely and validly request exclusion from the Class), ever had, now has or may in the future have against AT & T, BDP, **and their Related Parties (as defined in the Stipulation),** based on, connected with, arising out of, or related in whole or in part, directly or indirectly, to the switch to BDP's long-distance telephone service and all acts taken or related thereto

*Defendants' Summary Judgment Motion,* Ex. C (Ex. A, B attached thereto) at para. 28 (emphasis added). The "Stipulation" defines "Related Parties" as, *inter alia,* "any entity in which [a] Released Person has a controlling interest," and "Released Person" as "AT & T, BDP, Jenkins ... and each and all of their respective 'Related Parties.'" *Id.,* Ex. D at paras. 24, 26. In response to an interrogatory, Defendants stated that "From April 19, 1996 through to the present, Thomas David Jenkins has been [NMC's] sole officer and director. From January 1, 1996 through to the present date, Thomas David Jenkins has been [NMC's] sole shareholder." *Id.,* Ex. E, at 2. Finally, the Notice states that recipients can obtain "additional information" either from the counsel representing the class, or the files contained at the courthouse where the case had been filed. *See id.,* Ex. C (Ex. A, B attached thereto), at paras. 30–31.

Because the Notice directed recipients to "additional information," the *Lund* court intended the Notice to be only informative and not comprehensive. *See Gold Strike Stamp Company v. Christensen,* 436 F.2d 791 (10th Cir.1970) (notice that was informative and not comprehensive, and provided for means to obtain further information, satisfied due process requirements). Customer Plaintiffs have not stated why their decision to participate in the class would have been different had the notice *explicitly* indicated that they would forfeit claims against NMC, particularly in light of Plaintiffs' allegations that BDP was the principal in this case and directed NMC to use its telemarketing resources to help BDP defraud consumers. *See Amended Complaint* at para. 31 ("BDP, acting as principal, authorizes the Telemarketer to mislead consumers into enrolling with BDP."). Under these circumstances, Plaintiffs' suggestion that they would have opted out had the notice explicitly indicated that they would forfeit claims against NMC strains credulity. The Notice provided the information necessary, including where and how to obtain further information, for proposed class members to make a reasonably rational and informed decision regarding their participation in the class. *See Christensen,* 436 F.2d at 791, 7B Wright, *Federal Practice and Procedure,* § 1787 at 220. I conclude, therefore, that the Notice does not violate Due Process because it does not explicitly mention NMC.

3.

██ I am also not persuaded by Plaintiffs' argument that filing this lawsuit signaled Plaintiffs' desire to opt-out of the *Lund* class. In support of their argument, Customer Plaintiffs cite *McCubbrey v. Boise Cascade Home & Land Corp.,* 71 F.R.D. 62 (N.D.Cal. 1976). In *McCubbrey,* the Plaintiffs filed a suit separate from the class action after they received the class action notice, but prior to the end of the exclusion period. *Id.* at 69. Under those circumstances, the *McCubbrey* court held that filing the separate complaint "constituted an effective expression of [the plaintiffs'] desire to opt out of the" class action. *Id.*

Here, the *Lund* Notice was first disseminated to potential class members on August 26, 1999. *See Defendants' Motion for Summary Judgment,* Ex. C, para. 3. Plaintiffs filed their Complaint, and Amended Complaint in this case on February 25, 1999, and August 2, 1999, respectively. *McCubbrey* is thus distinguishable on its facts. Accordingly, I will not conclude that Plaintiffs opted out of the *Lund* class by filing the *Complaint* or *Amended Complaint* in this case.

I read Tenth Circuit authority to support this conclusion. During the pendency of the class action in *Four Seasons,* but before the potential class members were given the opportunity to opt-out of the designated classes, the State of Ohio filed multiple suits

against some of the class action defendants. *See Four Seasons,* 502 F.2d at 836–38. Although the Tenth Circuit stated in an earlier decision rendered in the same case that "considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude [it]self," *In re Four Seasons Securities Laws Litigation,* 493 F.2d 1288, 1291 (10th Cir. 1974), filing the lawsuits did not "constitute[ ] an effective expression of [Ohio's] desire to exclude [it]self." *Id.* Instead, the *Four Seasons* court held that binding Ohio to the class settlement satisfied "due process." *Four Seasons,* 502 F.2d at 843.

In so holding, the *Four Seasons* court stated

> we are guided by the purpose of the rule to prevent one-way intervention, the interests in the finality of judgments, and related case law precedent. To uphold the decision of the court below would, in our opinion, offer 'a return to one-way intervention under a new guise.' Defendants would be placed in the difficult position of having to go through complex litigation a second time against parties that would have participated in the judgment had it been favorable to them and, as appellants contend happened in the present case, the same arguments may be used against them which they had previously urged when they originally challenged the maintenance of the class action. The purpose of class actions is to avoid multiplicity of suits and upholding the decision of the court below would frustrate not only the interest in finality of judgments but also the interest in settlement of complex litigation.

*Four Seasons,* 502 F.2d at 843–44 (internal citations omitted). " 'One-way intervention' occurred [prior to the amendment of Rule 23 in 1966] when courts permitted absent parties to intervene after a decision favorable to their interests, even though an unfavorable decision would not have bound them." *Id.* at 843 n. 10. *See* 7B Wright et al., *Federal Practice and Procedure,* § 1787 at 210–11 ("By requiring the absentee to take affirmative action to avoid being bound, [Rule 23(c)(2)] attempts to eliminate the common practice in 'spurious' class suits prior to 1966

of waiting to see if the adjudication was favorable to the class before deciding whether to enter the action."). *See also In re Prudential Securities Inc.,* 164 F.R.D. 362, 370 (S.D.N.Y.1996) ("It is well established that 'pendency of an individual action does not excuse a class member from filing a valid request for exclusion.' ") (citation omitted) *aff'd* 107 F.3d 3; *Manji v. New York Life Insurance Co.,* 945 F.Supp. 919, 922 (D.S.C. 1996) ("the fact that this action was pending prior to the Willson class action 'does not excuse a class member from filing a valid request for exclusion.' ") (citation omitted); *Robinson v. Toyota Motor Credit Corp.,* 1999 WL 1272890, *6 (Ill.App. 1 Dist.) ("the prevailing view is that pending litigation is not a substitute for compliance with judicially ordered exclusion procedures in a class action.").

Here, allowing Plaintiffs' to opt out of the *Lund* class by virtue of their filing of this lawsuit would similarly "offer 'a return to one-way intervention under a new guise.' " *Four Seasons,* at 843 (citations omitted). Indeed, potential class action members could then file their own independent lawsuits during the pendency of the class action, take no other action to opt-out of the class, and then either participate in the class if they are satisfied with the outcome, or opt-out after the fact and pursue their own lawsuits. Such an outcome would effectively eviscerate "the purpose of class actions [ ] to avoid multiplicity of suits." *Id.* I conclude, therefore, that Plaintiffs did not opt out of the *Lund* class by filing this lawsuit.

4.

I agree with Plaintiffs Vista Village, Quail Hill, Woodshire East, Feldberg, and Chasar, however, that they are not part of the *Lund* class. In a footnote in their response to the summary judgment motion, Plaintiffs Vista Village, Quail Hill, Woodshire East, and Feldberg assert that they "communicated" with the Federal Communications Commission about their alleged slamming by Defendant BDP. *See Plaintiffs' Summary Judgment Response* at 12–13, n. 8. These allegations are corroborated by Mr. Konrad's affidavit. *See Rule 12(c) Motion,* Ex. A at para. 7. Because "person[s] switched to

BDP who made a complaint concerning BDP to the [FCC]" are "[e]xcluded from the [*Lund*] class," *Motion for Summary Judgment,* Ex. B at para.1 ("Order Granting Final Approval of Proposed Class Action Settlement and Judgment"), Plaintiffs Vista Village, Quail Hill, Woodshire East, and Feldberg are not members of the *Lund* class.

Similarly, in its response to the summary judgment motion, Plaintiff Chasar agrees with Mr. Konrad's claim that Defendant BDP "slammed" Plaintiff Chasar on December 8, 1995. *See Plaintiffs' Summary Judgment Response* at 11–12. Because the *Lund* class is defined as "[a]ll persons who were switched to and billed for Business Discount Plan, Inc. long-distance telephone service between June 12, 1996, inclusive, and July 23, 1999, inclusive," *Summary Judgment Motion,* Ex. B, at 2 ("Order Granting Final Approval of Proposed Class Action Settlement and Judgment"), Plaintiff Chasar is also not a member of the *Lund* class. Accordingly, only Plaintiffs Thunderbird, M & R, and Machining Data are members of the *Lund* class and, consequently, summary judgment against them on their claims against Defendants BDP and NMC is appropriate.

### C.

Defendants offer various further arguments addressed below regarding why Customer Plaintiffs' claims must be dismissed. Notwithstanding that I have granted summary judgment on all claims brought by Plaintiffs Thunderbird, M & R, and Machining Date against Defendants BDP and NMC, I address Defendants' further arguments with respect to all of the Customer Plaintiffs for the sake of simplicity. Of course, granting summary judgment based on any of these further arguments will provide alternative grounds for dismissing the claims of Plaintiffs Thunderbird, M & R, and Machining Data against Defendants BDP and NMC.

### D.

### 1.

■ Defendant BDP next argues that the Communications Act claims of Plaintiffs Vis-

ta Village, Quail Hill, Woodshire East, and Feldberg must be dismissed pursuant to 47 U.S.C. § 207. I agree.

Section 207 of the Communications Act states

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; *but such person shall not have the right to pursue both such remedies.*

47 U.S.C. § 207 (emphasis added). It cannot be credibly disputed that Defendant BDP is a "common carrier." *See* 47 U.S.C. § 153 ("The term 'common carrier' or 'carrier' means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter"); 47 C.F.R. § 21.2 ("Any person engaged in rendering communication service for hire to the public."). Consequently, because Plaintiffs Vista Village, Quail Hill, Woodshire East, and Feldberg filed complaints with the FCC, *see Plaintiffs' Summary Judgment Response* at 12–13 n. 8 ("Customer Plaintiffs Vista Village [ ], Quail Hill [ ], Woodshire East [ ], and Feldberg all communicated with the FCC regarding slamming activities"), they cannot pursue the same claims here.

### 2.

Defendants claim that Plaintiff Chasar's Communications Act claim must be dismissed pursuant to 47 U.S.C. § 415(b). I agree.

■ 47 U.S.C. § 415(b) states in relevant part: "All complaints against carriers for the recovery of damages not based on overcharges shall be filed with the Commission within two years from the time the cause of action accrues, and not after." 47 U.S.C. § 415(b). Although Plaintiff Chasar claims without citing any authority that Section

415(b) does not apply to claims filed in federal courts, as opposed to the FCC, every court of which I am aware that has addressed the issue has found otherwise. *See, e.g., Pavlak v. Church,* 727 F.2d 1425, 1426 (9th Cir.1984); *Swarthout v. Michigan Bell Tel. Co.,* 504 F.2d 748, 749 (6th Cir.1974); *Nordlicht v. New York Tel. Co.,* 617 F.Supp. 220 (S.D.N.Y.1985), *aff'd,* 799 F.2d 859 (2d Cir. 1986), *cert. denied,* 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987); *Cole v. Kelley,* 438 F.Supp. 129, 145 (C.D.Cal.1977); *Hofler v. American Telephone and Telegraph Co.,* 328 F.Supp. 893, 894 (E.D.Va.1971); *Ward v. Northern Ohio Telephone Co.,* 251 F.Supp. 606 (N.D.Ohio 1966), *aff'd. per curiam,* 381 F.2d 16 (6th Cir.1967). I will not deny Defendants motion, therefore, because Plaintiff Chasar filed this action in federal court.

In addition, Plaintiff Chasar's argument that Section 415(b) does not apply because "Chasar's claim is based on being slammed and deceived, not overcharged as defined in § 415(g)," *Plaintiffs' Consolidated Response* at 8, misreads Section 415(b). Section 415(b) applies to "the recovery of damages *not* based on overcharges." 47 U.S.C. § 415(b). Because Plaintiff Chasar's claims are "not based on overcharges," Section 415(b) applies. Consequently, Plaintiff Chasar's Communications Act claim must be dismissed because it filed the complaint in this case on February 25, 1999, more than two years after Defendant BDP allegedly slammed it on December 8, 1995, in contravention of Section 415(b). Summary judgment in favor of Defendants is thus appropriate with respect to "Count I" of Plaintiffs Vista Village, Quail Hill, Woodshire East, Feldberg, and Chasar.

3.

■ Defendants NMC, VSI, and IVI argue that because they cannot be considered "common carrier[s]" under 47 U.S.C. § 207, Plaintiffs' remaining Communications Act claims must be dismissed. *See Rule 12(c) Motion* at 5–7. *See also* 47 U.S.C. § 207(10) ("Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may ... bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district Court of the United States of competent jurisdiction"). Plaintiffs respond that Defendants NMC, VSI, and IVI "acted in concert with [Defendant BDP] for the benefit of all Defendants individually." *Plaintiffs' Consolidated Response* at 6. Plaintiffs also argue that Defendants NMC, VSI, and IVI are liable under 47 U.S.C. § 201, and Section 201 does not apply solely to "common carriers." *See* 47 U.S.C. § 201 ("All ... practices ... for and in connection with such communication service, shall be just and reasonable, and any such ... practice ... that is unjust or unreasonable is declared to be unlawful."). I disagree.

As an initial matter, I note that in their *Amended Complaint,* Plaintiffs assert standing to bring their Communications Act claim under Section 207. They do not assert standing under any other provision of the Communications Act. *See Amended Complaint* at paras. 41 ("Plaintiffs [ ] have standing to bring this action pursuant to Section 207 of the Communications Act, 47 U.S.C. § 207."). I also note that because Plaintiffs do not argue that Defendants NMC, VSI, and IVI are "common carrier[s]" as defined by the Communications Act and FCC regulations, Plaintiffs concede that they are not. *See* 47 U.S.C. § 153 ("The term 'common carrier' or 'carrier' means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier."); 47 C.F.R. § 21.2 ("Any person engaged in rendering communication service for hire to the public."). Consequently, Plaintiffs only have standing to pursue their Communications Act-based claim to the extent that Section 207 permits suits against non-common carriers.

Under its plain meaning, Section 207—based claims can only be brought against "common carrier[s]." 47 U.S.C. § 207. Plaintiffs have cited no authority interpreting Section 207 more broadly. Plaintiffs have also not cited authority for their apparently

novel theory that Defendants NMC, VSI, and IVI can be sued as "common carriers" because they conspired with one, and I am aware of none. Further, there is authority for the opposite proposition. *See, e.g., Maydak v. Bonded Credit Co. Inc.*, 96 F.3d 1332 (9th Cir.1996) (holding that court did not have subject matter jurisdiction under the Communications Act over claim against agency seeking to collect payment from customer of common carrier who claimed the common carrier incorrectly billed him for services rendered); *Eagleview Technologies, Inc. v. MDS Associates*, 190 F.3d 1195 (11th Cir. 1999) (upholding District Court's Rule 50 dismissal of claims brought under 47 U.S.C. §§ 201, 202 because Defendant was not a "common carrier"), Accordingly, Plaintiffs do not have standing to pursue their Communications Act claim against Defendants NMC, VSI, and IVI. *See Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (in order to establish standing, a plaintiff must show, *inter alia*, that the interests which he or she seeks to vindicate "arguably [fall] within the zone of interests ... protected by the statute or constitutional guarantee.").

■ Even if Plaintiffs had brought their Communications Act claim pursuant to Section 201, I would not have subject matter jurisdiction under that claim with respect to Defendants NMC, VSI, and IVI. As the Ninth Circuit has stated in similar circumstances,

> private actions are generally limited to those explicitly authorized by the [Communications] Act, except when implied in certain extremely narrow circumstances as an expression of federal common law.... In the broadest interpretation to date, some courts ... under the guise of fashioning federal common law, have permitted the carriers to serve as plaintiffs and to bring actions against delinquent customers to collect charges regulated by a tariff.

*Maydak*, 96 F.3d at 1333–34. *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 814 & n. 12, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (Unless a federal statute bestows a private right of action, courts should presume that Congress did not intend the statute to confer federal jurisdiction). Section 201 does not explicitly authorize a private cause of action. *See* 47 U.S.C. § 201. Plaintiffs have provided no compelling reason why I should recognize an implied private cause of action thereunder. Under these circumstances, I will not expand federal common law to allow Plaintiffs to pursue a claim under Section 201 against Defendants NMC, VSI, and IVI. Accordingly, summary judgment is appropriate with respect to Plaintiffs' Communications Act claim against Defendants NMC, VSI, and IVI.

4.

■ Defendants next argue alternatively that Plaintiff U.S. West's Communications Act claim must be dismissed with respect to them because none of Plaintiff U.S. West's customers were slammed away from U.S. West to Defendant BDP. Plaintiff U.S. West responds in essence that there are such customers, but fails to identify any. Plaintiff U.S. West also argues that it is entitled to damages under Section 258 because its personnel "t[ook] and respond[ed] to customer complaints regarding slamming and deceptive marketing." *Plaintiffs' Consolidated Response* at 14. I disagree.

Under either a Rule 12(c) or 56 standard, Plaintiff U.S. West has failed to properly support their Communications Act claim. By failing to identify customers, including any of the Plaintiffs, who have been slammed away from U.S. West to Defendant BDP, Plaintiff U.S. West fails to either "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Conley*, 355 U.S. at 47, 78 S.Ct. 99, or respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson*, 622 F.2d at 519. *See also Riddle*, 83 F.3d at 1201 ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). In addition, Section 258 limits the recovery to which "telecommunications carrier[s]" are entitled under that section to the "amount equal to all charges paid by such subscriber after [being slammed]." 47 U.S.C. § 258. Section 258 does not expressly provide for

the recovery of costs associated with "t[ak-ing] and respond[ing] to customer complaints regarding slamming and deceptive market-ing," *Plaintiffs' Consolidated Response* at 14, and Plaintiff U.S. West has not presented an argument why such a cause of action should be read into Section 258. Accordingly, Plain-tiff U.S. West's Communications Act claim must be dismissed.

### 5.

Defendants offer a number of additional reasons why "Count I" must be dismissed. Based on the rulings above, "Count I" has been dismissed with respect to all of the Defendants. Any decision issued on these alternative grounds for dismissal would thus represent unnecessary dictum. Accordingly, I will not address any of Defendants' further arguments regarding "Count I."

### E.

Defendants argue that Customer Plaintiffs do not have standing to pursue false adver-tising and false association claims under Sec-tion 1125 of the Lanham Act. In response, Plaintiffs state that only Plaintiff U.S. West is pursuing such claims. Accordingly, the motion is granted to the extent the Amended Complaint states Section 1125 claims by Cus-tomer Plaintiffs.

### F.

Defendants claim that Plaintiff U.S. West's false advertising claim must be dismissed because they do not compete with Plaintiff U.S. West. As support, Defendants NMC, VSI, and IVI state that they do not offer telecommunications services and, therefore, cannot be considered competitors of Plaintiff U.S. West. Defendant BDP claims that dur-ing all times relevant to Plaintiff's claims, Plaintiff U.S. West both was forbidden from offering interLATA long distance service, and only allowed competitors to offer intra-LATA long distance in Arizona, Minnesota, New Mexico, and Wyoming. Defendant BDP claims that it does no business in Minnesota, no Customer Plaintiffs reside in New Mexico and Wyoming, and only Plaintiff CHASAR resides in Arizona. Defendants conclude that "at all times relevant to Plain-tiffs' Amended Complaint, BDP did not com-pete with U.S. West for ... intraLATA long distance because all such traffic automatically defaulted to U.S. West." *Defendants' Motion* at 23.

The Lanham Act provides a cause of action for damages resulting from, *inter alia,* false advertising that can be brought against

any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combina-tion thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertis-ing or promotion, misrepresents the na-ture, characteristics, qualities, or geo-graphic origin of his or her *or another person's* goods, services, or commercial ac-tivities.

15 U.S.C. § 1125(a) (emphasis added). Not-withstanding the emphasized language, the Tenth Circuit has held that "to have standing for a false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury." *Stanfield v. Osborne Industries, Inc.,* 52 F.3d 867, 873 (10th Cir.1995) (relying on *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1109 (9th Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 355 (1993)). Although the Tenth Circuit has never defined "competitive injury," the Ninth Circuit, upon which the Tenth Circuit relied in establishing the "com-petitive injury" requirement, has held that "harm[ ] to the plaintiff's ability to compete with the defendant" constitutes such an inju-ry. *Barrus v. Sylvania,* 55 F.3d 468, 470 (9th Cir.1995).

Here, Defendants NMC, VSI, and IVI do not provide telecommunications ser-vices, but merely provided non-telecommuni-cations services to Defendant BDP. Defen-dants NMC, VSI, and IVI cannot, therefore, be deemed "competitors" of Plaintiff U.S. West. *Stanfield,* 52 F.3d at 873. According-ly, Plaintiff U.S. West's false advertising claim must be dismissed with respect to De-fendants NMC, VSI, and IVI.

■ Plaintiff U.S. West's false advertising claim against Defendant BDP is different. Defendant BDP apparently concedes that it competed with Plaintiff U.S. West for intraLATA long distance service in at least Arizona, New Mexico, and Wyoming. Indeed, Defendant BDP admits that Plaintiff CHASAR resided in Arizona during all times relevant to the claims in this case. In addition, Defendant BDP's statement that none of the Customer Plaintiffs reside in New Mexico and Wyoming does not mean that Defendant BDP did not compete with Plaintiff U.S. West in those states. Finally, I cannot say that no reasonable juror could conclude that Plaintiff Defendant BDP's actions "harm[ed] ... [Plaintiff U.S. West's] ability to compete with" Defendant BDP. *Barrus*, 55 F.3d at 470. Accordingly, summary judgment is inappropriate with respect to Plaintiff U.S. West's false advertising claim against Defendant BDP.

### G.

■ Defendants next argue that Plaintiff U.S. West's remaining Lanham Act claims for trademark infringement/false association, and trademark dilution, must be dismissed. Specifically, Defendants claim that Plaintiff U.S. West's "mark ... cannot meet the 'in commerce' requirement in the Lanham Act because ... U.S. West ... is limited to providing intraLATA intrastate long distance services." *Defendants' Motion* at 24. Plaintiff U.S. West responds that because it is regulated by the FCC, it satisfies the Lanham Act's "commerce" requirement. I agree.

Under Section 1125, claims can be brought for both trademark dilution, and trademark infringement/false association. Both claims have a "commerce" requirement. *See* 15 U.S.C. §§ 1125(a)(1), 1125(c). It is well settled that the scope of the "commerce" requirement as a jurisdictional predicate is broad and has a sweeping reach. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283, 73 S.Ct. 252, 97 L.Ed. 319 (1952). The Lanham Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127.

Here, there is no question that Plaintiff U.S. West is regulated by the FCC, and that the FCC's authority to regulate is delegated by Congress. Accordingly, subject matter jurisdiction exists over Plaintiff U.S. West's trademark dilution, and trademark infringement/false association claims. Summary judgment is thus inappropriate.

### H.

### 1.

■ Defendants next argue that Plaintiff U.S. West's claim based on the Colorado Consumer Protection Act (CCPA) must be dismissed because Defendants' conduct did not injure Plaintiff U.S. West. Plaintiff U.S. West responds, *inter alia*, that its CCPA claim is valid because it asserts that the alleged conspiracy injured its trademark. I agree.

Under the CCPA, individuals can bring an action for damages resulting from "unfair trade practices" as defined in C.R.S. § 6–1–105. *See* C.R.S. § 6–1–113. Under C.R.S. § 6–1–113, Plaintiff U.S. West must establish, *inter alia*, that it "suffered injury in fact to a legally protected interest." *Hall v. Walter*, 969 P.2d 224, 235 (Colo.1998). The Colorado Supreme Court has stated that "injury to property, particularly property with business value, lies squarely within the interests that the CCPA is intended to protect." *Hall*, 969 P.2d at 236. In addition, the Tenth Circuit recognizes that a trademark is a protected property right. *See Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1223 (10th Cir.1998) (holding that theory of unjust enrichment based on a property theory of trademark rights in which a plaintiff can recover for an "infringer's use of the markholder's property to make a profit" "has long been the rule in this Circuit"). Accordingly, because Plaintiff U.S. West alleges that its trademark has been damaged as a result of Defendants' actions, summary judgment on Plaintiff U.S. West's CCPA claim is inappropriate.

### 2.

■ Defendants assert that Customer Plaintiffs cannot recover under the CCPA because "they do not operate in Colorado

and, thus, Colorado law cannot apply to these Plaintiffs." *Defendant's Motion* at 25. Even if Colorado law applies to the Customer Plaintiffs, Defendants contend they cannot collect under the CCPA because Defendant BDP "re-rated" them, "and, therefore, they have no damages." *Id.* According to Mr. Konrad's affidavit, "re-rating" involved refunding any amount charged Customer Plaintiffs over what they would have been charged based on AT & T's rates. *Defendants' Motion*, Ex. A at para. 6.

Customer Plaintiffs respond that "they dispute ... that they have all been fully re-rated," and contend that they "may also be entitled to damages other than re-rating for violation of their 'legally protected interest,' including but not limited to their right to choose their long distance carrier and attorney's fees and costs under the CCPA." *Plaintiffs' Consolidated Response* at 23. In support of the latter statement, Customer Plaintiffs cite *Hall*, 969 P.2d at 230–31. Customer Plaintiffs also contend that Defendants have failed to satisfy their burden of establishing that they do not "operate" in Colorado.

C.R.S. § 6–1–113 states in relevant part:

The provisions of this article shall be available in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed in this article. An action under this section shall be available to any person who: (a) Is an actual or potential consumer of the defendant's goods, services, or property and is injured as a result of such deceptive trade practice; or ... (c) In the course of the person's business or occupation, is injured as a result of such deceptive trade practice.

Defendants have not cited any portion of the CCPA, or any other authority, that requires Plaintiffs bringing actions thereunder to have "operat[ed]" in Colorado. I will not impose such a jurisdictional requirement in the absence of any clear statutory language indicating otherwise.

In support of their claim that Customer Plaintiffs no longer have injuries compensable under the CCPA because Defendant BDP "re-rated" them, Defendants BDP and NMC cite Mr. Konrad's affidavit. In that affidavit, Mr. Konrad lists the amount charged each Customer Plaintiff under Defendant BDP's rates, and the amount refunded. In contrast, Customer Plaintiffs fail to cite any evidence in support of their assertion that "that they have [not] been fully re-rated." *Plaintiffs' Consolidated Response* at 23. In addition, Customer Plaintiffs fail to cite any authority other than *Hall* in support of their assertion that they "may also be entitled to damages other than re-rating for violation of their 'legally protected interest,' including but not limited to their right to choose their long distance carrier." *Plaintiffs' Consolidated Response* at 23. Nevertheless, *Hall* does not establish that the "right to choose [one's] long distance carrier" is a "legally protected interest" under the CCPA, nor am I aware of any other authority establishing as much. Finally, plaintiffs are only entitled to attorney's fees and costs if their claim under C.R.S. § 6–1–113 is "successful." C.R.S. § 6–1–131(2)(b). Customer Plaintiffs have thus failed to establish specific facts showing the existence of a genuine factual issue to be tried with respect to their CCPA claims. *Otteson*, 622 F.2d at 519. Summary judgment is thus appropriate on these claims.

I.

██ Defendants argue that Plaintiffs' common law unfair competition claims must be dismissed because they do not compete with Plaintiffs. Customer Plaintiffs agree that their common law unfair competition claim should be dismissed. Plaintiff U.S. West argues, on the other hand, that its common law unfair competition claim should not be dismissed because Defendants competed with it.

"The law of unfair competition has its roots in the common-law tort of deceit." *University of Colorado Foundation, Inc. v. American Cyanamid*, 880 F.Supp. 1387, 1403 (D.Colo. 1995) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989)). For many years, the tort was limited to situations involving "palming off." *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F.Supp. 131, 136 (D.Colo.1980). Eventually, the tort was

broadened beyond "palming off" claims: "what constitutes unfair competition is a question of fact; no inflexible rules govern the applicability of the doctrine," but the "most important consideration" remained "whether defendant's conduct will confuse or deceive the public." *Id. See Bonito Boats,* 489 U.S. at 158, 109 S.Ct. 971 ("the common-law tort of unfair competition [generally] has been limited to protection against copying of nonfunctional aspects of consumer products which have acquired secondary meaning such that they operate as a designation of source."). More recently, the Colorado Court of Appeals has framed the inquiry slightly differently: whether Defendant "unfair[ly] misappropriat[es] and exploit[s][ ] a competitor's business values." *American Television and Communic. Corp. v. Manning,* 651 P.2d 440, 445 (Colo.App.1982) (citing with approval *Coors,* 486 F.Supp. at 131). *See also Heller v. Lexton–Ancira Real Estate Fund, Ltd.,* 809 P.2d 1016, 1021 (Colo. App.1990) (stating that torts of unfair competition and misappropriation prohibit the appropriation of plaintiff's expenditure of labor, skill, and money), *rev'd on other grounds,* 826 P.2d 819 (Colo.1992).

Whether the inquiry focuses on public deception or the "unfair misappropriation and exploitation of a competitor's business values," Plaintiff U.S. West's claim against Defendant BDP survive summary judgment. Plaintiff U.S. West alleges that Defendants BDP employed its name and trademark to deceive the public into believing that Plaintiff U.S. West sponsored, or was somehow affiliated with, Defendant BDP's "Business Discount Plan." In addition, Plaintiff U.S. West claims, and Defendant BDP does not dispute, that it competed with Defendant BDP for intraLATA long distance service in Arizona, New Mexico, and Wyoming. If Plaintiff U.S. West's allegations are true, Defendant BDP may have "unfair[ly] misappropriat[ed] and exploit[ed]" Plaintiff U.S. West's goodwill or "business values" to sell its own product at the expense of Plaintiff U.S. West, and in so doing deceived the public. Summary judgment on Plaintiff U.S. West's common law unfair competition claim against Defendant BDP is inappropriate.

 As for Defendants NMC, VSI, and IVI, I am not aware of any case applying Colorado's common law claim of unfair competition to individuals or entities that undertook actions analogous to those allegedly undertaken by Defendants NMC, VSI, and IVI in this case. Under Plaintiff U.S. West's allegations, Defendants NMC, VSI, and IVI may have enjoyed incidental benefits from promoting or participating in the alleged deception. But Defendants NMC, VSI, and IVI did not "unfair[ly] misappropriat[e] and exploit[ ][ ] [Plaintiff U.S. West's] business values," *Manning,* 651 P.2d at 445, or "confuse or deceive the public," *A. Genderson & Sons,* 486 F.Supp. at 136, to promote their *own* products or services. Plaintiff U.S. West's vague allegations that "Defendants operate in the sphere of telecommunications" is insufficient. *Plaintiffs' Consolidated Response* at 24. Under these circumstances, no genuine issue of material fact remains regarding whether Defendants NMC, VSI, and IVI can be held liable for common law unfair competition. Summary judgment is appropriate on Plaintiff U.S. West's common law unfair competition claims against Defendants NMC, VSI, and IVI.

J.

Defendants next claim that the claim for tortious interference with prospective business advantage must be dismissed because they cannot establish that the alleged interference prevented the formation of a contract. Customer Plaintiffs agree that this claim must be dismissed with respect to them. Plaintiff U.S. West, on the other hand, states "that Defendants' fraudulent representations to customers within U.S. West's 14 State Region affected U.S. West's ability to contract with its customers for its services, whether they be intraLATA long distance or some other service offered by U.S. West." *Plaintiffs' Consolidated Response* at 26.

 The Tenth Circuit has held that to establish a claim for tortious interference with prospective business relations [under Colorado law], a plaintiff must show intentional and improper interference preventing the formation of a contract. The

defendant can interfere either by inducing or causing a third party not to enter into or continue relations, or by preventing the plaintiff from acquiring or continuing the relations. It is not necessary to prove an underlying contract. However, a protected relationship exists only if there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope.

*Klein v. Grynberg,* 44 F.3d 1497, 1506 (10th Cir.1995) (citations omitted). Here, Plaintiff U.S. West's allegations regarding the formation of prospective contracts represents nothing more than "mere hope." *Id.* Indeed, Plaintiff U.S. West does not identify any person or entity with whom it allegedly had "a reasonable likelihood or probability that a contract would have resulted" but for Defendants' alleged actions. *Id.* Under these circumstances, no genuine issues of material fact remain regarding whether Defendants tortiously interfered with Plaintiff U.S. West's prospective business advantage. Summary judgment is appropriate on this basis.

### K.

Defendants next argue that the unjust enrichment claim must be dismissed. Specifically, they claim that because Customer Plaintiffs were re-rated, those Plaintiffs received their interLATA interstate long distance service at the same rate as that charged by the carrier from which they were slammed. In addition, Defendants assert that they "could not have slammed U.S. West customers from U.S. West intraLATA long distance service because [ ] intraLATA equal access was not available during the relevant time period." *Rule 12(c) Motion* at 28.

Plaintiff U.S. West responds that because U.S. West offered intraLATA long distance service in Arizona, New Mexico, and Wyoming, "Defendants were unjustly enriched in these [ ] states." *Plaintiffs' Consolidated Response* at 27. Customer Plaintiffs contest that they have been fully re-rated. Plaintiffs conclude that their unjust enrichment claims cannot be dismissed. I disagree.

Plaintiffs have failed to respond with specific facts showing the existence of a genuine

factual issue to be tried. *See Otteson,* 622 F.2d at 519; Fed.R.Civ.P. 56(e). Plaintiff U.S. West fails to establish that any of its customers were actually slammed by Defendant BDP, or that any person or entity signed up for Defendant BDP's service based on the mistaken belief that Plaintiff U.S. West was somehow affiliated with that service. In stark contrast to Mr. Konrad's detailed affidavit, Customer Plaintiffs offer no affidavits supporting their claim that they have not been fully re-rated, or other evidence indicating how much they were charged and/or refunded by Defendant BDP. Under these circumstances, Plaintiffs' response constitutes nothing more than unsupported allegations "without any significant probative evidence tending to support the complaint," *White,* 45 F.3d at 360 (internal quote and citation omitted), and/or conclusory assertions that factual disputes exist. *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. Summary judgment on Plaintiffs' unjust enrichment claims is appropriate.

### L.

Defendants argue that because all of Plaintiffs' claims must be dismissed, I must dismiss their civil conspiracy claim. Because I have not dismissed all of Plaintiff's claims, summary judgment on Plaintiffs' civil conspiracy claims is inappropriate on this basis.

### M.

Finally, Defendants claim that I should decline to exercise supplemental jurisdiction over Plaintiff U.S. West's remaining CCPA claim under 28 U.S.C. § 1367(c)(1), (2). Because of my above rulings, Defendant cannot maintain that the remaining state law claims "substantially predominate[ ] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). In addition, Defendants have failed to identify why the remaining state law claims "raise[ ] a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Consequently, I will not decline to exercise jurisdiction over Plaintiff U.S. West's state law CCPA claim.

Accordingly, IT IS ORDERED that

(1) the Rule 12(c) motion filed by Defendants BDP and NMC, and the Rule 12(b)(6) motion filed by Defendants VSI and IVI, ARE CONVERTED into ones for summary judgment;

(2) the motions are GRANTED IN PART, and DENIED IN PART;

(3) all claims are DISMISSED except the following:

 (a) Plaintiff U.S. West's false advertising claim against Defendant BDP;

 (b) Plaintiff U.S. West's trademark infringement/false association claims against all of the Defendants;

 (c) Plaintiff U.S. West's trademark dilution claims against all of the Defendants;

 (d) Plaintiff U.S. West's CCPA claim against all of the Defendants;

 (e) Plaintiff U.S. West's common law unfair competition claim against Defendant BDP; and

 (f) Plaintiff U.S. West's civil conspiracy claims against all of the Defendants;

(4) Plaintiffs Thunderbird, Chasar, Vista Village, Quail Hill, Woodshire East, M & R, Machining Data, and Feldberg are DISMISSED. The caption is AMENDED to reflect this change. Defendants are AWARDED THEIR COSTS with respect to these dismissed Plaintiffs.